Opinion filed October 25, 2007











 
 
  
 
 







 
 
  
 
 




Opinion filed October 25,
2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-06-00214-CV 

                                                    __________

 

                       CENTRE INSURANCE COMPANY, SUCCESSOR

                     TO
BUSINESS INSURANCE COMPANY, Appellant

 

                                                             V.

 

                                         CARL
POLLITT, Appellee

 



 

                                        On
Appeal from the County Court at Law

 

                                                           Ector
County, Texas

 

                                                Trial
Court Cause No. CC-13,907

 



 

                                                                   O
P I N I O N

 








This
is a workers=
compensation dispute.  Carl Pollitt suffered an on-the-job injury and received
workers= compensation
benefits from Centre Insurance Company, Successor to Business Insurance
Company.  After reaching maximum medical improvement (MMI), Pollitt claimed
that his condition had substantially changed and he sought an increased
impairment rating.  The trial court granted Pollitt=s motion for summary judgment and increased
Pollitt=s impairment
rating.  Because Pollitt=s
condition changed after his statutory MMI date, we reverse the trial court=s judgment and render
judgment for Centre.

                                                              I.
Background Facts

Pollitt
was injured while in the course and scope of his employment on March 6, 1995. 
Centre accepted his claim and began paying benefits.  Pollitt reached statutory
MMI on March 11, 1997, but he subsequently underwent three spinal surgeries. 
The first was on July 28, 1998, the second on August 17, 1999, and the third on
March 21, 2000.  After the second surgery, Pollitt requested a Benefit Review
Conference to discuss his MMI and impairment rating.  The parties did not reach
a settlement at the conference and the Texas Workers= Compensation Commission[1]
held a Contested Case Hearing (CCH) on December 21, 1999.  The hearing officer
found that Statutory MMI occurred on March 11, 1997,[2]
and that Pollitt=s
impairment rating was ten percent. 

Pollitt
appealed the hearing officer=s
decision to the Commission=s
Appeals Panel, which affirmed.  Pollitt then filed suit in Ector County.  The
trial court found that Pollitt=s
condition had substantially changed.  The Commission-designated doctor
re-examined Pollitt and determined that his impairment rating was now
twenty-six percent.[3]  The trial
court entered judgment for Pollit, holding that his impairment rating should be
increased to twenty-six percent.

                                               II. Issues

Centre
challenges the trial court=s
decision with two issues.  Centre contends the trial court erred by finding
that Pollitt experienced a substantial change of condition and by finding that
he had a twenty-six percent impairment rating.

                                                                   III.
Discussion








The
Texas Workers=
Compensation Act[4] provides
medical and income benefits for injured employees. Eligibility for and the
calculation of income benefits (excluding lifetime income benefits) is a
function of whether the employee has reached MMI and, if so, whether he has an
impairment rating.  The Act defines MMI as the earlier of:

(A)
the earliest date after which, based on reasonable medical probability, further
material recovery from or lasting improvement to an injury can no longer
reasonably be anticipated;

 

(B)
the expiration of 104 weeks from the date on which income benefits begin to
accrue; or

 

(C)
the date determined as provided by [Tex.
Lab. Code Ann. '
408.104 (Vernon 2006)] [for spinal surgeries].[5]

 

Section
401.011(30).  Consequently, unless an employee has or is scheduled for spinal
surgery during this 104-week period, the legislature has imposed a two-year
deadline for reaching MMI.  Fulton v. Associated Indem. Corp., 46 S.W.3d
364, 372 (Tex. App.CAustin
2001,  pet. denied); see also Tex. Workers= Comp. Comm=n v. Garcia, 893 S.W.2d 504, 525 (Tex.
1995) (the legislature established what is in essence a two-year cap on temporary
income benefits for all claimants whether their condition has stabilized or
not).

Centre
argues that the trial court erred because it disregarded the two-year
deadline.  Centre contends that, when an employee reaches the statutory MMI
date, subsequent developments are immaterial because the impairment rating
cannot be thereafter reevaluated.  In support of this position, Centre directs
our attention to Fulton, 46 S.W.3d at 372, where the court wrote:

Under the plain
language of the Act, if a worker=s
condition deteriorates within the two-year period, it may be reevaluated; if it
deteriorates more than two years after income benefits begin to accrue, the
worker has no recourse.

 








Pollitt responds
that the Commission may lack the authority to reevaluate an impairment rating
after two years but that trial courts have the authority to do so pursuant to Tex. Lab. Code Ann. ' 410.307 (Vernon 2006).[6] 
We disagree with Pollitt for two reasons.  First, because employees are
required to exhaust their administrative remedies before seeking judicial
review, the trial court has no greater authority than the Commission.  Second,
the two-year deadline for reaching MMI is mandatory.

A. 
Exhaustion of Administrative Remedies.








In
Tex. Dep=t
of Ins., Div. of Workers=
Comp. v. Jackson, 225 S.W.3d 734, 736 (Tex. App.CEastland 2007, no pet.), we held that the Act
imposes a three-step administrative process as a predicate to seeking judicial
review, that each step is contingent upon completion of the prior proceeding,
and that each step is limited to the scope of the prior proceeding. 
Consequently, we found that the trial court lacked the authority to consider
issues beyond those originally presented to the hearing officer at the
Contested Case Hearing.  Id. at 737.  Section 410.307 gives trial courts
the authority to consider evidence of the extent of impairment that was
not presented to the Commission if the court first finds that there is a
substantial change of condition.  We do not read this as authorizing trial
courts to make a decision that the Commission could not.  Instead, this
statute creates an exception to the exhaustion-of-administrative-remedies
requirement by allowing trial courts to consider new evidence in limited
circumstances.  See Lumbermens Mut. Cas. Co. v. Manasco, 971 S.W.2d 60,
63 (Tex. 1998) (Section 410.307 is a rule of evidence that applies when a
worker seeks judicial review of a Commission decision, but it does not act as a
safety valve to excuse exhausting administrative remedies before seeking
judicial review).  The trial court, therefore, has no greater authority to
reevaluate an impairment rating after the statutory MMI date than the
Commission.

B.
Statutory MMI. 

The
Act=s
constitutionality was challenged shortly after its adoption.  See Garcia,
893 S.W.2d 504.  The plaintiffs=
challenges included a complaint that terminating temporary income benefits
after two years B even
if the employee=s condition
had not yet stabilized B
violated the Texas Constitution=s
equal protection provision.   Id. at 525.  The Texas Supreme Court held
that, even if this rule created a class, it was not an irrational
classification and, therefore, not unconstitutional. Id. at 525.  The
court noted that the Act was adopted in response to concerns that the prior
system was too expensive for employers and was unfair to employees.  Id.
at 512.  For example, a Legislative Select Committee identified problems with
low and limited benefits and premature settlements.  Id. at 512.  

The
concept of MMI was an integral part of the legislature=s solution because it impacts both benefit
eligibility and settlements. The Act created four levels of income benefits: 
temporary, impairment, supplemental, and lifetime.  Id. at 513.  Injured
employees receive temporary income benefits until reaching MMI.  If they still
have an impairment rating, they receive impairment income and are potentially
eligible for supplemental income.  Id. at 513-14.  The Act prohibits
settlements that discharge an insurer=s
liability for future medical costs and settlements impacting an employee=s impairment before
reaching MMI. 








The
court found that the legislature could have concluded that an absolute time
limit on temporary income benefits was a necessary component of an efficient
compensation system and held that restricting them to two years was not
arbitrary because medical testimony established that most workers= conditions stabilized
within that time.  Id.  The court recognized that adopting a two-year
cap could impact some employees because not all medical conditions will
stabilize within two years, but the court concluded that in most instances this
will benefit the employee because their impairment rating will be determined as
of the statutory MMI date rather than when their condition has actually reached
its maximum improvement.  Id. at 525.  Employees such as Pollitt can
argue that they are the exception to the rule and point to evidence
establishing a subsequent decline in their condition.  The mere presence of a
line such as the two-year cap necessarily means that some individuals will
receive disparate treatment.  However, because the legislature clearly intended
that result and because the Act provides workers with an adequate substitute
for a negligence remedy, it is enforceable.

Pollitt
argues that this construction will make Section 410.307 useless since most
impairment issues cannot reach judicial review prior to the statutory MMI
date.  We do not hold that trial courts lack the authority to consider whether
a substantial change of condition has occurred merely because the hearing is
held after the statutory date.  Our holding is that the substantial change in
condition must occur before the statutory date.  Because Pollitt claimed that
his condition substantially changed after his statutory MMI date, the trial
court lacked the authority to find a substantial change of condition or to
increase Pollitt=s
impairment rating.  Centre=s
first issue is sustained.  This holding makes it unnecessary to address Centre=s second issue.

                                           IV. Holding

The
judgment of the trial court is reversed, and judgment is rendered that Pollitt
take nothing. 

 

 

RICK STRANGE

JUSTICE

October 25, 2007

Panel consists of: Wright, C.J.,

McCall, J., and Strange, J.









     [1]The legislature
abolished the Texas Workers= Compensation
Commission on September 1, 2005, and transferred its responsibilities to the
Texas Department of Insurance, Division of Workers= Compensation.  Act of May 29, 2005, 79th Leg. R.S.,
ch. 265 '' 8.001(b), 8.004(a), 2005 Tex. Sess. Law Serv. 608. 
Because the TWCC was still in existence at all times relevant to this dispute,
we will refer to it rather than the Division.





     [2]The hearing officer=s findings of fact state that the statutory date was
March 11, 1997, but his conclusions of law hold that it was May 22, 1996.  The
parties have stipulated that the correct date was March 11, 1997.





     [3]See Tex. Lab. Code Ann. ' 408.0041 (Vernon 2006) (designated doctor
examination).





     [4]See Tex. Lab. Code Ann. ' 401.001 et seq. (Vernon 2006).  Hereinafter the AAct.@





     [5]This statute gives
the Commission the authority to extend the 104-week period if the employee has
spinal surgery or has been approved for spinal surgery and the
Commissioner rules within twelve weeks before the expiration of the 104-week
period.





     [6]This statute
provides:

 

(a) Evidence of the extent of impairment is not limited
to that presented to the division if the court, after a hearing, finds that
there is a substantial change of condition.  The court=s finding of a substantial change of condition may be
based only on:

 

(1) medical evidence from the same doctor
or doctors whose testimony or opinion was presented to the division;

 

(2) evidence that has come to the party=s knowledge since the contested case hearing;

 

(3) evidence that could not have been
discovered earlier with due diligence by the party; and

 

(4) evidence that would probably produce a
different result if it is admitted into evidence at the trial.

 

(b) If substantial change of condition is disputed, the
court shall require the designated doctor in the case to verify the substantial
change of condition, if any.  The findings of the designated doctor shall be
presumed to be correct, and the court shall base its finding on the medical
evidence presented by the designated doctor in regard to substantial change of
condition unless the preponderance of the other medical evidence is to the
contrary.

 

(c) The substantial change of condition must be
confirmable by recognized laboratory or diagnostic tests or signs confirmable
by physical examination.

 

(d) If the court finds a substantial change of
condition under this section, new medical evidence of the extent of impairment
must be from and is limited to the same doctor or doctors who made impairment
ratings before the division under [Tex.
Lab. Code Ann. ' 408.123 (Vernon 2006)].

 

(e) The court=s
finding of a substantial change of condition may not be made known to the jury.

 

(f) The court or jury in its determination of the
extent of impairment shall adopt one of the impairment ratings made under this
section.