**CENTRE INSURANCE COMPANY, Successor to Business Insurance Company, Appellant,**

v.

**Carl POLLITT, Appellee.**

**No. 11-06-00214-CV.**

Court of Appeals of Texas, Eastland.

Oct. 25, 2007.

Rehearing Overruled Nov. 29, 2007.

---

John V. Fundis, Downs & Stanford, P.C., Dallas, for appellant.

Barry L. Hart, Odessa, for appellee.

Panel consists of: WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

RICK STRANGE, Justice.

This is a workers' compensation dispute. Carl Pollitt suffered an on-the-job injury and received workers' compensation benefits from Centre Insurance Company, Successor to Business Insurance Company. After reaching maximum medical improvement (MMI), Pollitt claimed that his condition had substantially changed and he sought an increased impairment rating. The trial court granted Pollitt's motion for summary judgment and increased Pollitt's impairment rating. Because Pollitt's condition changed after his statutory MMI date, we reverse the trial court's judgment and render judgment for Centre.

### I. *Background Facts*

Pollitt was injured while in the course and scope of his employment on March 6, 1995. Centre accepted his claim and began paying benefits. Pollitt reached statutory MMI on March 11, 1997, but he subsequently underwent three spinal surgeries. The first was on July 28, 1998, the second on August 17, 1999, and the third on March 21, 2000. After the second surgery, Pollitt requested a Benefit Review Conference to discuss his MMI and impairment rating. The parties did not reach a settlement at the conference and the Texas Workers' Compensation

Commission[1] held a Contested Case Hearing (CCH) on December 21, 1999. The hearing officer found that Statutory MMI occurred on March 11, 1997,[2] and that Pollitt's impairment rating was ten percent.

Pollitt appealed the hearing officer's decision to the Commission's Appeals Panel, which affirmed. Pollitt then filed suit in Ector County. The trial court found that Pollitt's condition had substantially changed. The Commission-designated doctor re-examined Pollitt and determined that his impairment rating was now twenty-six percent.[3] The trial court entered judgment for Pollit, holding that his impairment rating should be increased to twenty-six percent.

## II. *Issues*

Centre challenges the trial court's decision with two issues. Centre contends the trial court erred by finding that Pollitt experienced a substantial change of condition and by finding that he had a twenty-six percent impairment rating.

## III. *Discussion*

The Texas Workers' Compensation Act[4] provides medical and income benefits for injured employees. Eligibility for and the calculation of income benefits (excluding lifetime income benefits) is a function of whether the employee has reached MMI and, if so, whether he has an impairment rating. The Act defines MMI as the earlier of:

(A) the earliest date after which, based on reasonable medical probability, further material recovery from or lasting improvement to an injury can no longer reasonably be anticipated;

(B) the expiration of 104 weeks from the date on which income benefits begin to accrue; or

(C) the date determined as provided by [TEX. LAB.CODE ANN. § 408.104 (Vernon 2006)] [for spinal surgeries].[5]

Section 401.011(30). Consequently, unless an employee has or is scheduled for spinal surgery during this 104–week period, the legislature has imposed a two-year deadline for reaching MMI. *Fulton v. Associated Indem. Corp.*, 46 S.W.3d 364, 372 (Tex. App.-Austin 2001, pet. denied); *see also Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 525 (Tex.1995) (the legislature established what is in essence a two-year cap on temporary income benefits for all claimants whether their condition has stabilized or not).

Centre argues that the trial court erred because it disregarded the two-year deadline. Centre contends that, when an em-

---

1. The legislature abolished the Texas Workers' Compensation Commission on September 1, 2005, and transferred its responsibilities to the Texas Department of Insurance, Division of Workers' Compensation. Act of May 29, 2005, 79th Leg. R.S., ch. 265 §§ 8.001(b), 8.004(a), 2005 Tex. Sess. Law Serv. 608. Because the TWCC was still in existence at all times relevant to this dispute, we will refer to it rather than the Division.

2. The hearing officer's findings of fact state that the statutory date was March 11, 1997, but his conclusions of law hold that it was May 22, 1996. The parties have stipulated that the correct date was March 11, 1997.

3. *See* TEX. LAB.CODE ANN. § 408.0041 (Vernon 2006) (designated doctor examination).

4. *See* TEX. LAB.CODE ANN. § 401.001 et seq. (Vernon 2006). Hereinafter the "Act."

5. This statute gives the Commission the authority to extend the 104–week period if the employee has spinal surgery or has been approved for spinal surgery *and* the Commissioner rules within twelve weeks before the expiration of the 104–week period.

ployee reaches the statutory MMI date, subsequent developments are immaterial because the impairment rating cannot be thereafter reevaluated. In support of this position, Centre directs our attention to *Fulton,* 46 S.W.3d at 372, where the court wrote:

> Under the plain language of the Act, if a worker's condition deteriorates within the two-year period, it may be reevaluated; if it deteriorates more than two years after income benefits begin to accrue, the worker has no recourse.

Pollitt responds that the Commission may lack the authority to reevaluate an impairment rating after two years but that trial courts have the authority to do so pursuant to TEX. LAB.CODE ANN. § 410.307 (Vernon 2006).[6] We disagree with Pollitt for two reasons. First, because employees are required to exhaust their administrative remedies before seeking judicial review, the trial court has no greater authority than the Commission. Second, the two-year deadline for reaching MMI is mandatory.

## A. Exhaustion of Administrative Remedies.

■ In *Tex. Dep't of Ins., Div. of Workers' Comp. v. Jackson,* 225 S.W.3d 734, 736 (Tex.App.-Eastland 2007, no pet.), we held that the Act imposes a three-step administrative process as a predicate to seeking judicial review, that each step is contingent upon completion of the prior proceeding, and that each step is limited to the scope of the prior proceeding. Consequently, we found that the trial court lacked the authority to consider issues beyond those originally presented to the hearing officer at the Contested Case Hearing. *Id.* at 737. Section 410.307 gives trial courts the authority to consider *evidence* of the extent of impairment that was not presented to the Commission if the court first finds that there is a substantial change of condition. We do not read this as authorizing trial courts to make a *decision* that the Commission could not. Instead, this statute creates an exception to the exhaustion-of-administrative-remedies requirement by allowing trial courts to consider new evi-

---

6. This statute provides:

(a) Evidence of the extent of impairment is not limited to that presented to the division if the court, after a hearing, finds that there is a substantial change of condition. The court's finding of a substantial change of condition may be based only on:

(1) medical evidence from the same doctor or doctors whose testimony or opinion was presented to the division;

(2) evidence that has come to the party's knowledge since the contested case hearing;

(3) evidence that could not have been discovered earlier with due diligence by the party; and

(4) evidence that would probably produce a different result if it is admitted into evidence at the trial.

(b) If substantial change of condition is disputed, the court shall require the designated doctor in the case to verify the substantial change of condition, if any. The findings of the designated doctor shall be presumed to be correct, and the court shall base its finding on the medical evidence presented by the designated doctor in regard to substantial change of condition unless the preponderance of the other medical evidence is to the contrary.

(c) The substantial change of condition must be confirmable by recognized laboratory or diagnostic tests or signs confirmable by physical examination.

(d) If the court finds a substantial change of condition under this section, new medical evidence of the extent of impairment must be from and is limited to the same doctor or doctors who made impairment ratings before the division under [TEX. LAB.CODE ANN. § 408.123 (Vernon 2006)].

(e) The court's finding of a substantial change of condition may not be made known to the jury.

(f) The court or jury in its determination of the extent of impairment shall adopt one of the impairment ratings made under this section.

dence in limited circumstances. *See Lumbermens Mut. Cas. Co. v. Manasco*, 971 S.W.2d 60, 63 (Tex.1998) (Section 410.307 is a rule of evidence that applies when a worker seeks judicial review of a Commission decision, but it does not act as a safety valve to excuse exhausting administrative remedies before seeking judicial review). The trial court, therefore, has no greater authority to reevaluate an impairment rating after the statutory MMI date than the Commission.

### B. Statutory MMI.

■ The Act's constitutionality was challenged shortly after its adoption. *See Garcia*, 893 S.W.2d 504. The plaintiffs' challenges included a complaint that terminating temporary income benefits after two years—even if the employee's condition had not yet stabilized—violated the Texas Constitution's equal protection provision. *Id.* at 525. The Texas Supreme Court held that, even if this rule created a class, it was not an irrational classification and, therefore, not unconstitutional. *Id.* at 525. The court noted that the Act was adopted in response to concerns that the prior system was too expensive for employers and was unfair to employees. *Id.* at 512. For example, a Legislative Select Committee identified problems with low and limited benefits and premature settlements. *Id.* at 512.

The concept of MMI was an integral part of the legislature's solution because it impacts both benefit eligibility and settlements. The Act created four levels of income benefits: temporary, impairment, supplemental, and lifetime. *Id.* at 513. Injured employees receive temporary income benefits until reaching MMI. If they still have an impairment rating, they receive impairment income and are potentially eligible for supplemental income. *Id.* at 513–14. The Act prohibits settlements that discharge an insurer's liability for fu-

ture medical costs and settlements impacting an employee's impairment before reaching MMI.

The court found that the legislature could have concluded that an absolute time limit on temporary income benefits was a necessary component of an efficient compensation system and held that restricting them to two years was not arbitrary because medical testimony established that most workers' conditions stabilized within that time. *Id.* The court recognized that adopting a two-year cap could impact some employees because not all medical conditions will stabilize within two years, but the court concluded that in most instances this will benefit the employee because their impairment rating will be determined as of the statutory MMI date rather than when their condition has actually reached its maximum improvement. *Id.* at 525. Employees such as Pollitt can argue that they are the exception to the rule and point to evidence establishing a subsequent decline in their condition. The mere presence of a line such as the two-year cap necessarily means that some individuals will receive disparate treatment. However, because the legislature clearly intended that result and because the Act provides workers with an adequate substitute for a negligence remedy, it is enforceable.

Pollitt argues that this construction will make Section 410.307 useless since most impairment issues cannot reach judicial review prior to the statutory MMI date. We do not hold that trial courts lack the authority to consider whether a substantial change of condition has occurred merely because the hearing is held after the statutory date. Our holding is that the substantial change in condition must occur before the statutory date. Because Pollitt claimed that his condition substantially changed after his statutory MMI date, the trial court lacked the authority to find a

substantial change of condition or to increase Pollitt's impairment rating. Centre's first issue is sustained. This holding makes it unnecessary to address Centre's second issue.

## IV. *Holding*

The judgment of the trial court is reversed, and judgment is rendered that Pollitt take nothing.