# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00034-CV

**State Office of Risk Management, Appellant**

**v.**

**Erika M. Cole, as Sole Beneficiary of the Estate of Carolyn P. Cole, Deceased, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 274TH JUDICIAL DISTRICT NO. C2005-1076C, HONORABLE DIB WALDRIP, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The State Office of Risk Management ("SORM") appeals a no-evidence summary judgment entered in favor of Erika M. Cole, sole beneficiary of the estate of Carolyn P. Cole.[1] *See* Tex. R. Civ. P. 166a(i). SORM sought judicial review of several determinations made by the Appeals Panel of the Texas Workers' Compensation Commission, now known as the Department of Insurance—Division of Workers' Compensation ("DWC").[2] *See* Tex. Lab. Code Ann. § 410.252(a) (West Supp. 2010). SORM argued that the medical evidence did not support the determinations. Erika moved for no-evidence summary judgment on the ground that SORM had no evidence contradicting the medical evidence on which DWC based the determinations. We conclude

---

[1] For the sake of clarity, we will refer to the Coles by their first names.

[2] DWC assumed the duties of the Texas Workers' Compensation Commission in September 2005. *See* Act of May 29, 2005, 79th Leg., R.S., ch. 265 §§ 8.001(b), 8.004(a), 2005 Tex. Sess. Law Serv. 608. For the sake of simplicity, we refer to the agency involved in this dispute as "DWC" throughout this opinion.

that SORM produced sufficient evidence to preclude summary judgment, so we reverse and remand

for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

Carolyn worked for the State of Texas. On January 29, 1999, she injured her cervical

spine while using an industrial-grade hole puncher at work. Carolyn applied to SORM for certain

workers' compensation benefits.[3] SORM hired Wayne Gordon, M.D., to examine Carolyn. Gordon

is on the list of "designated doctors" approved by DWC to examine workers' compensation

claimants.[4] In this case, however, Gordon did not serve in the "designated doctor" capacity because

he was hired by SORM rather than DWC.

Gordon examined Carolyn on August 27, 1999, and wrote a report summarizing his

findings. The report stated that Carolyn had reached maximum medical improvement on the date

---

[3] SORM administers workers' compensation claims filed by state employees against the State. *See* Tex. Lab. Code Ann. § 412.011(a) (West Supp. 2010).

[4] A "designated doctor" is a doctor approved by DWC to evaluate workers' compensation claimants and opine on matters related to their injuries. *See* Tex. Lab. Code Ann. § 408.0041(a) (West Supp. 2010). A designated doctor "must meet specific qualifications," including "demonstrated expertise in performing examinations and making evaluations." *Id*. § 408.1225(a) (West Supp. 2010). DWC gives "presumptive weight" to the report of a designated doctor, meaning that DWC "shall base its determination of whether the employee has reached maximum medical improvement [defined below] on the report unless the preponderance of the other medical evidence is to the contrary." *Id*. § 408.1225(b).

of the examination[5] and had an overall impairment rating of six percent.[6]  The report noted that Carolyn had "[p]re-existing cervical degenerative disc disease and fusion," including "a fusion at C5-6, herniated discs and osteophytes," that were "not caused by the accident that occurred on 1/28/99."  According to the report, Gordon found it "medically improbable that using the hole punch would cause the degenerative changes in the cervical spine or cause [Carolyn's] cervical degenerative condition."  Gordon ultimately concluded that Carolyn's "clinical diagnosis related to her injury is cervical strain."

Based on Gordon's report, SORM denied Carolyn certain income-related benefits for her hole-punching injury.  Carolyn asked DWC to review SORM's decision.  *See id*. § 410.151(a) (West 2006).  While that review was occurring, Gordon reexamined Carolyn.  On September 29, 2003, he wrote a second report that stated:

> [Carolyn's] cervical complaints in my opinion are solely related to a preexisting cervical arthritic condition with spondylosis and congenital fusion at C5,6.  She sustained a cervical strain injury only in the hole[-]punching incident occurring in January 1999, which should not be causing continued complaints in September 2003

---

[5]  For present purposes, the date of "maximum medical improvement" is the earlier of (1) "the earliest date after which, based on reasonable medical probability, further material recovery from or lasting improvement to an injury can no longer reasonably be anticipated"; and (2) "the expiration of 104 weeks from the date on which income benefits begin to accrue."  *Id*. § 401.011(30) (West Supp. 2010).  Income benefits begin to accrue on the date of injury when, as here, a disability persists for two weeks or longer.  *Id*. § 408.082(c) (West 2006).

[6]  "Impairment rating" is "the percentage of permanent impairment of the whole body resulting from a compensable injury."  *Id*. § 401.011(24) (West Supp. 2010).  An "impairment" is "any anatomic or functional abnormality or loss existing after maximum medical improvement that results from a compensable injury and is reasonably presumed to be permanent."  *Id*. § 401.011(23).
Gordon calculated Carolyn's impairment rating by consulting the Third Edition of the American Medical Association's "Guides to the Evaluation of Permanent Impairment."  Doctors are statutorily required to consult the "Guides" in assigning impairment ratings.  *See id*. § 408.124 (West 2006).

3

. . . . In my opinion the effects of the compensable injury, which was a cervical strain, has [sic] resolved and she has continued to have pain in the cervical spine from the preexisting cervical degenerative condition and a separate low back condition.

On July 6, 2004, DWC issued a decision concerning the extent of the injuries caused by Carolyn's hole-punching accident. The decision found that Carolyn's accident did not cause a cervical strain as Gordon believed, but rather caused a herniation. SORM did not appeal that decision.

The parties continued to dispute Carolyn's impairment rating and date of maximum medical improvement, so DWC ordered Carolyn to have another physical examination, this time by an officially chosen "designated doctor." *See id.* § 408.0041(a) (West Supp. 2010). Dr. Pablo Guajardo, M.D., performed the examination on December 4, 2004. He assigned Carolyn an impairment rating of twenty-five percent and a maximum medical improvement date of February 5, 2001.[7]

SORM asked Casey Cochran, D.O., to conduct a peer review of Guajardo's report. *See* 28 Tex. Admin. Code § 180.22(g) (West 2011) ("A peer reviewer is a health care provider who performs an administrative review at the insurance carrier's request without a physical examination of the injured employee."). Like Gordon and Guajardo, Cochran is on DWC's list of "designated doctors," though he did not serve in that capacity in this dispute. Cochran issued a report on January 17, 2005 that criticized Guajardo's methodology and concluded that Guajardo's impairment

---

[7] This date represents "the expiration of 104 weeks from the date on which income benefits begin to accrue." *Id.* § 401.011(30). It was the latest possible date of maximum medical improvement. *See Centre Ins. Co. v. Pollitt*, 242 S.W.3d 112, 114-15 (Tex. App.—Eastland 2007, pet. denied) (Labor Code § 401.011(30) dictates that date of maximum medical improvement cannot be later than 104 weeks from date of disability).

4

rating of twenty-five percent "cannot be considered accurate." Cochran's report stated that an impairment rating of six percent (matching Gordon's rating) "would be acceptable."

The DWC officer overseeing the parties' dispute rejected Gordon's and Cochran's reports and adopted Guajardo's impairment rating and date of maximum medical improvement. The officer rejected Gordon's report because the report concluded that the hole-punching incident caused only a cervical strain, not a cervical herniation.[8] The officer acknowledged that Guajardo's methodology was problematic but adopted Guajardo's findings anyway because of the "special, presumptive status" afforded designated doctors' findings. *See* Tex. Lab. Code Ann. § 408.0041(e) (West Supp. 2010) (report of designated doctor has presumptive weight unless evidence preponderates to the contrary).[9]

Based on Guajardo's findings, the officer also determined that Carolyn was disabled from August 27, 1999 to February 5, 2001 as a result of her hole-punching accident. *See id*. § 401.011(16) (West Supp. 2010) (defining "disability" to mean "the inability because of a compensable injury to obtain and retain employment at wages equivalent to the preinjury wage"). In a separate hearing, another DWC officer determined that because Carolyn was unable to work

---

[8] The hearing officer's order stated: "[I]t is clear that [Gordon's] report is not valid because it is based on a diagnosis of a cervical strain on the examination date of the [sic] August 27, 1999, when the extent-of-injury of cervical herniations was later established. It is notable that [Gordon] examined [Carolyn] again on September 29, 2003, and testified at the hearing that he continues to maintain his position that [Carolyn] suffered from a cervical strain only (which he believes had resolved), despite being informed of the established extent of the injury."

[9] The officer's order stated that Gordon's findings merely represented "a difference of medical opinion" from Guajardo's and as such did not overcome the presumptive validity of Guajardo's findings.

5

after her date of maximum medical improvement, she was entitled to supplemental income benefits for the twelve quarters spanning July 16, 2002 to March 29, 2005. *See id*. § 408.142 (West 2006).[10]

Carolyn died on June 17, 2005, and her daughter, Erika, sole beneficiary of her estate, assumed her role in the contested case hearings. SORM administratively appealed the determinations concerning impairment rating, date of maximum medical improvement, eligibility for supplemental income benefits, and disability status between August 27, 1999 and February 5, 2001. *See id*. § 410.202(a) (West 2006). The appeals panel, without written opinion, allowed those determinations to become final. *See id*. § 410.204(c) (West 2006). SORM then filed suit for judicial review. *See id*. § 410.252(a).

After several years of discovery, Erika filed a motion for no-evidence summary judgment. *See* Tex. R. Civ. P. 166a(i). She argued that summary judgment was proper because SORM had produced no evidence to suggest that DWC's determinations were erroneous; specifically, she argued that

> [n]o medical records, reports or testimony has been produced to support [SORM's] burden to show by a preponderance of the evidence that [Carolyn] *did not* reach [maximum medical improvement] on February 5, 2001; that [Carolyn] *did not* sustain an [impairment rating] of 25%; that [Carolyn] *did not* have disability from August 27, 1999 through February 5, 2001; and that [Carolyn] *was not* entitled to [supplemental income benefits].

---

[10] An employee is entitled to supplemental income benefits only if her compensable injury has caused an impairment rating of fifteen percent or more. *See* Tex. Lab. Code Ann. § 408.142(a)(1) (West 2006). Guajardo's impairment rating of twenty-five percent therefore entitled Carolyn to supplemental income benefits, whereas Gordon and Cochran's impairment rating of six percent would not have entitled Carolyn to supplemental income benefits.

In response to Erika's motion, SORM argued that no-evidence summary judgment was improper for several reasons. First, it argued that Gordon's and Cochran's reports, which contradicted Guajardo's finding of a twenty-five-percent impairment rating, represented more than a scintilla of evidence that DWC erred by adopting Guarjardo's impairment rating. Second, SORM argued that Gordon's report, which contradicted Guajardo's maximum-medical-improvement date of February 5, 2001, represented more than a scintilla of evidence that DWC erred by adopting Guarjardo's maximum-medical-improvement date. Third, SORM argued that Gordon's and Cochran's reports, which both asserted an impairment rating of six percent, represented more than a scintilla of evidence that DWC erred by awarding Carolyn supplemental income benefits. *See* Tex. Lab. Code § 408.142(a)(1) (supplemental income benefits available only if compensable injury caused impairment rating of fifteen percent or more). Finally, SORM argued that the reports of Gordon and of Carolyn's personal physician, Stephen Earle, M.D., represented more than a scintilla of evidence that Carolyn's disability between August 27, 1999 and February 5, 2001 did not result from her hole-punching accident.[11]

The trial court issued orders granting Erika's motion for summary judgment and awarding Erika attorney's fees. *See id*. § 408.221(c) (West 2006) (claimant who prevails in insurer's suit for judicial review entitled to recover attorney's fees). SORM appeals both orders.

---

[11] Gordon's September 2003 report stated that the effects of Carolyn's hole-punching accident should have resolved by the end of March 1999. Earle's reports stated that Carolyn was "100% disabled" starting in October 1998. If true, this assertion obviously meant that Carolyn's January 1999 hole-punching accident could not cause disability.

**STANDARD OF REVIEW**

We review summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). A motion for no-evidence summary judgment asserts that, after adequate time for discovery, there is no evidence of one or more essential elements of a claim or defense on which the adverse party would have the burden of proof at trial. Tex. R. Civ. P. 166a(i). To defeat a motion for no-evidence summary judgment, the non-movant must show that more than a scintilla of evidence exists to raise a genuine issue of material fact on the challenged elements. *Id.* More than a scintilla of evidence exists if the evidence would allow reasonable and fair-minded people to differ in their conclusions. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion of a fact." *Id.* (internal quotation marks omitted). In determining whether sufficient evidence exists to defeat no-evidence summary judgment, we review the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *Id.* at 751.

**DISCUSSION**

SORM raises two issues on appeal:

1.   Summary judgment was improper because SORM presented more than a scintilla of evidence that DWC erred in determining Carolyn's impairment rating, date of maximum medical improvement, eligibility for supplemental income benefits, and disability status between August 27, 1999 and February 5, 2001.

2.     Erika was not entitled to attorney's fees because she should not have prevailed on summary judgment.

We will consider these issues in turn.

### Whether Summary Judgment was Proper

SORM argues that it produced more than a scintilla of evidence that DWC erred with regard to each of the four contested determinations. We will address each determination individually.

### Impairment Rating

SORM argues that Gordon's finding of a six-percent impairment rating constitutes more than a scintilla of evidence that DWC erred in finding Carolyn's impairment rating to be twenty-five percent. Erika argues that Gordon's opinion on impairment rating is not proper summary-judgment evidence because Gordon believed that Carolyn's accident caused only a cervical strain, and this belief conflicts with DWC's "final and binding" determination that Carolyn's accident caused a herniation. Erika seems to be arguing that SORM cannot offer Gordon's opinion on impairment rating without implicitly contesting DWC's extent-of-injury determination, and SORM is jurisdictionally prohibited from contesting DWC's extent-of-injury determination because SORM did not appeal it. *See* Tex. Lab. Code Ann. § 410.302(b) (West 2006) (judicial review of DWC determinations limited to issues specifically appealed and set forth in pleading of aggrieved party).

This argument fails because even though Gordon believed that Carolyn's accident did not cause a herniation, he also testified during a deposition that Carolyn merited a six-percent

impairment rating even if her accident did cause a herniation.[12] This means that Gordon's six-percent impairment rating does not depend on the view that Carolyn's accident did not cause a herniation, which in turn means that offering Gordon's impairment rating as evidence does not require contesting DWC's extent-of-injury determination.

Erika next argues that even if SORM is not jurisdictionally barred from offering Gordon's report as evidence, we should disregard the report because Gordon's methodology was flawed. Specifically, Erika argues that Gordon wholly failed to consider Carolyn's herniation in calculating her impairment rating, so his opinion is invalid. *See Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 637 (Tex. 2009) (expert opinion is invalid, and therefore not probative evidence, if based on assumed facts that vary from actual facts).

This argument ignores the fact that Gordon testified during his deposition that he *did* consider Carolyn's herniation in calculating her impairment rating:

Q: What conditions did you consider in reaching your impairment rating for Ms. Cole in 1999?

A: I considered all the conditions that are shown on her cervical MRI.

Q: Which ones were those, Doctor?

---

[12] Gordon based this testimony on his interpretation of table 49, subparagraph II.C. of the American Medical Association's "Guides to the Evaluation of Permanent Impairment." A copy of table 49 is in the record. The table is titled "Impairments Due to Specific Disorders of the Spine." Paragraph II includes a list of "Intervertebral disc or other soft tissue lesions," and subparagraph II.C. applies to lesions that are "[u]noperated, with medically documented injury and a minimum of six months of medically documented pain, recurrent muscle spasm or rigidity associated with moderate to severe degenerative changes on structural tests, *including unoperated herniated nucleus pulposus*." (Emphasis added.) According to subparagraph II.C., all cervical-spine lesions meeting this description receive a six-percent impairment rating. Gordon testified that Carolyn's cervical strain and cervical herniation both met the description contained in subparagraph II.C.

A: Cervical disc—degenerative disc disease, cervical disc herniations, degenerative arthritis, all those were considered . . . It was not just the cervical strain that I based my rating on.

Erika ignores this testimony and argues that in the following exchange Gordon admitted he did not actually consider Carolyn's herniation is calculating her impairment rating:

Q: There was only one injury that you thought she had *that was related* in either of your reports or your exams, and what was that?

A: Cervical strain.

(Emphasis added.) The key to understanding this exchange is the questioner's phrase "that was related." In context, it seems that the questioner is asking Gordon which one injury he thought was related to (i.e., a result of) Carolyn's hole-punching accident. Gordon's answer does not indicate, as Erika argues, that Gordon erroneously thought a cervical strain was the only injury Carolyn had; it indicates, rather, that Gordon thought a cervical strain was the only injury Carolyn had *that was related to* (i.e., a result of) her hole-punching accident. We must interpret Gordon's testimony in this manner because it favors SORM, *see Chapman*, 118 S.W.3d at 751 (reviewing court must view summary-judgment evidence in light most favorable to non-movant), but even if we adopted Erika's interpretation it would establish only that Gordon gave conflicting testimony on which conditions he considered in calculating Carolyn's impairment rating. Such a conflict would itself preclude summary judgment. *See Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965) (court must disregard summary-judgment evidence favorable to movant if other evidence contradicts it).

11

In sum, viewed in the light most favorable to SORM, Gordon's reports are admissible summary-judgment evidence on the issue of impairment rating. Because the reports conflict with DWC's determination on impairment rating, they create a genuine issue of material fact precluding summary judgment. *See id*. We sustain SORM's first sub-issue.

### Date of Maximum Medical Improvement

SORM argues that Gordon's finding of a maximum-medical-improvement date of August 27, 1999 constitutes more than a scintilla of evidence that DWC erred by determining Carolyn's maximum-medical-improvement date to be February 5, 2001. Erika makes basically the same counterargument on this issue that she made on the issue of impairment rating—namely, that Gordon's opinion is not proper summary-judgment evidence because Gordon "disregarded an extent-of-injury determination that is jurisdictionally binding."

This argument fails because Gordon testified and wrote in his report that he considered all of Carolyn's conditions, including her herniation, in concluding that August 27, 1999 was the date of maximum medical improvement.[13] Whether Gordon is right about that date is immaterial for present purposes; what matters is that because Gordon did not ignore Carolyn's herniation in calculating the date of maximum medical improvement, Erika's argument for

---

[13] Again, Erika quotes deposition testimony in which Gordon appears to say that he considered only Carolyn's cervical strain in calculating the date of maximum medical improvement. Taken in context and viewed in the light most favorable to SORM, this testimony is more fairly read to suggest that Gordon did consider Carolyn's herniation but thought that it did not result from her hole-punching accident. But even if we interpreted Gordon's testimony in the manner Erika suggests, it would only establish that Gordon gave conflicting testimony on which injuries he considered in calculating the date of maximum medical improvement, which would itself preclude summary judgment. *See Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965) (court must disregard summary-judgment evidence favorable to movant if other evidence contradicts it).

disregarding his opinion fails. Because Gordon's opinion conflicts with DWC's determination on maximum medical improvement, it creates a genuine issue of material fact precluding summary judgment. *See* Tex. R. Civ. P. 166a(i). We sustain SORM's second sub-issue.

### *Supplemental Income Benefits*

An employee must have an impairment rating of fifteen percent or more to qualify for supplemental income benefits. Tex. Lab. Code § 408.142. Having already determined that Gordon's report constitutes more than a scintilla of evidence that Carolyn's impairment rating was only six percent, it follows that Gordon's report also constitutes more than a scintilla of evidence that Carolyn was not entitled to supplemental income benefits. We sustain SORM's third sub-issue.

### *Disability between August 27, 1999 and February 5, 2001*

SORM argues that it presented two pieces of evidence that suggested Carolyn's compensable injury did not cause her to be disabled between August 27, 1999 and February 5, 2001: (1) Gordon's 2003 report, which stated that the injury became asymptomatic within eight weeks of the accident (i.e., by the end of March 1999), and (2) a report by Stephen Earle, Carolyn's personal physician, that stated Carolyn was "100% disabled" by an October 1998 injury. Erika does not address Earle's report, but she does argue that Gordon's report is no evidence on the issue of disability because Gordon did not specifically evaluate Carolyn for disability. While true, this fact is irrelevant to the validity of Gordon's opinion that Carolyn's compensable injury became asymptomatic within eight weeks (i.e., by the end of March 1999). That opinion, which we must take as true for present purposes, *see Chapman*, 118 S.W.3d at 751, obviously implies that Carolyn's injury could not have caused disability between August 27, 1999 and February 5, 2001. Combined

13

with Earle's statement that Carolyn was fully disabled by a 1998 injury, Gordon's opinion clearly constitutes more than a scintilla of evidence that Carolyn's hole-punching accident did not cause any disability between August 27, 1999 and February 5, 2001. *See* Tex. R. Civ. P. 166a(i). We sustain SORM's fourth sub-issue.

### *Attorney's Fees*

Finally, SORM argues that Erika was not entitled to attorney's fees because she should not have prevailed on summary judgment. *See* Tex. Lab. Code § 408.221(c) (claimant who prevails in insurer's suit for judicial review entitled to recover attorney's fees). We agree; having determined that Erika should not have prevailed on summary judgment, it follows that Erika was not entitled to attorney's fees. *See id*. We sustain SORM's second issue.

## CONCLUSION

SORM produced sufficient evidence to preclude summary judgment on each DWC determination that it appealed. It follows that Erika was not entitled to attorney's fees as a prevailing party. We reverse the trial court orders granting summary judgment and awarding attorney's fees, and we remand the cause for further proceedings consistent with this opinion.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton and Rose

Reversed and Remanded

Filed:   June 16, 2011

14