Donald FULTON, Appellant,

v.

**ASSOCIATED INDEMNITY CORPORATION,**
Appellee.

No. 03–00–00449–CV.

Court of Appeals of Texas,
Austin.

April 12, 2001.

Norman W. Darwin, Forth Worth, for appellant.

Gregory R. Ave, Touchstone, Bernays, Johnston, Bell & Smith, Dallas, for appellee.

Before Justices KIDD, B.A. SMITH and PURYEAR.

BEA ANN SMITH, Justice.

Donald Fulton suffered a back injury while on the job and after several months of treatment was assessed at maximum medical improvement (MMI) with an impairment rating of seven percent. Six months later his symptoms resurfaced, and Fulton and his doctors asked the Workers' Compensation Commission to amend his MMI certification date and impairment rating. The Commission determined that Fulton's first MMI assessment and impairment rating had become final because he failed to dispute that rating within ninety days of its assignment, as required by Commission Rule 130.5(e) (the 90–day Rule). That rule states: "The first impairment rating assigned to an employee is considered final if the rating is not disputed within 90 days after the rating is assigned." 28 Tex. Admin. Code § 130.5(e) (2000). Fulton sought judicial review of the Commission's decision and order, challenging the validity of the 90–day Rule. The district court affirmed the Commission's decision. On appeal, Fulton complains that the 90–day Rule contravenes the Workers' Compensation Act (the Act) by implicitly finalizing an MMI certification within ninety days if it is not disputed. We hold that the 90–day Rule is invalid; therefore, we reverse the order of the district court and render judgment granting Fulton's motion for summary judgment.

## FACTS AND PROCEDURAL BACKGROUND

After Fulton was injured on the job in June 1995, he was initially treated by Dr. Fred Arnold, a chiropractor. In September 1995, Dr. Arnold referred Fulton to Dr. Jacob Rosenstein, a neurosurgeon, who diagnosed Fulton with a cervical spine injury, which involved a disc bulge and protrusion. In October 1995, Dr. Rosenstein noted that surgery might be required if Fulton's condition did not improve, but no surgery was performed at that time. Although a small central disc bulge was confirmed by a CT scan on November 21, Dr. Arnold released Fulton to work without restrictions on November 27, 1995.

In January 1996, Dr. Arnold referred Fulton to another doctor to determine whether Fulton had reached MMI, the point when a certifying doctor determines that no further recovery can be reasonably anticipated and assigns an impairment rating. *See* Tex. Lab.Code Ann. § 401.011(30) (West Supp.2001) & § 408.123 (West 1996). On January 11, 1996, a certifying doctor ascertained that Fulton had reached MMI with an impairment rating of seven percent.

To determine the impairment rating, the certifying doctor evaluated the permanent effect of Fulton's injury according to statutory guidelines.[1] *See id.* § 408.124 (West Supp.2001); *Rodriguez v. Serv. Lloyds Ins. Co.*, 997 S.W.2d 248, 253 (Tex.1999). The impairment rating represents the percentage of permanent impairment to the whole body. Tex. Lab.Code Ann. § 401.011(24) (West Supp.2001); *Rodriguez*, 997 S.W.2d at 253. The greater percentage, the longer the employee receives impairment income benefits. *Rodriguez*, 997 S.W.2d at 253.

---

1. Section 408.124 provides that the American Medical Association's "Guides to the Evaluation of Permanent Impairment" shall be used to determine the existence and degree of an employee's impairment. Tex. Lab.Code Ann. § 408.124(b) (West Supp.2001).

An injured worker qualifying for impairment income benefits receives seventy percent of his average weekly wage. Tex. Lab.Code Ann. § 408.126 (West 1996). These benefits are available from the date MMI is certified and continue for three weeks for every percentage point of impairment. *Id.* § 408.121(a). The impairment rating may also qualify an employee for supplemental income benefits, which provide long-term disability compensation, if the impairment rating is fifteen percent or higher. *Id.* § 408.142(a); *Rodriguez,* 997 S.W.2d at 253. Medical benefits continue whatever the impairment rating. *See* Tex.Lab.Code Ann. § 408.021(a) (West 1996) (providing medical benefits for health care "as and when needed").

Fulton's seven-percent impairment rating entitled him to twenty-one weeks of impairment income benefits; he did not qualify for supplemental income benefits. Dr. Arnold discussed the significance of the impairment rating with Fulton on January 25, 1996. Fulton acknowledged receiving a copy of his MMI and impairment rating certification on February 24, 1996.

In May 1996, Fulton began working for a new employer. After three days, he developed intense neck pain and headaches. Fulton returned to Dr. Arnold for treatment, who again referred Fulton to Dr. Rosenstein. A cervical myleogram revealed a disc herniation with bilateral nerve root compression; on September 11, 1996, Dr. Rosenstein determined that Fulton's condition had deteriorated so seriously that he now required surgery. Dr. Rosenstein operated on Fulton on October 4, 1996. In December 1996, Drs. Rosenstein and Arnold wrote to Fulton's certifying doctor asking him to reconsider Fulton's MMI date and impairment rating. The certifying doctor filed an amendment with the Commission rescinding the prior

certification. The doctor made a new determination that Fulton reached MMI on January 10, 1997, and assessed a new impairment rating of twelve percent.

On May 14, 1997, a contested case hearing was held and the hearing officer found that under the 90–day Rule, the MMI and seven-percent impairment rating became final on January 11, 1996. *See* 28 Tex. Admin. Code § 130.5(e). Fulton appealed to the Commission, which affirmed that decision. Fulton then sued Associated Indemnity Corporation,[2] his employer's insurance carrier for workers' compensation, challenging the validity of Rule 130.5(e). Both parties filed motions for summary judgment. The trial court granted Associated Indemnity's motion for summary judgment and denied Fulton's motion. Fulton appeals that judgment to this Court.

### STANDARD OF REVIEW

The propriety of summary judgment in this case is a question of law; therefore, we review the trial court's decision de novo. *See McCarthy Bros. Co. v. Cont'l Lloyds Ins. Co.,* 7 S.W.3d 725, 728 (Tex. App.—Austin 1999, no pet.). When both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary-judgment proof presented by both sides and determine all questions presented. *Comm'rs Court v. Agan,* 940 S.W.2d 77, 81 (Tex.1997). If we find error, we must render the judgment the trial court should have rendered. *Id.*

### DISCUSSION

Fulton complains that the trial court erred in granting Associated Indemnity's motion for summary judgment and in denying his motion because the Commission

**2.** The Workers' Compensation Commission participates as amicus curiae in this appeal.

relied on an invalid rule to determine that his MMI date and impairment rating had become final on January 11, 1996. He claims that the 90–day Rule is invalid because it contravenes the purpose of the Act to provide benefits for injured employees, including those whose conditions deteriorate after MMI certification and impairment ratings are assigned. He contends that the rule implicitly requires that claimants dispute their MMI certification within ninety days of assignment even though the Act allows two years for a claimant's condition to stabilize.[3] Fulton asserts that this result imposes on claimants additional burdens, conditions, or restrictions in excess of, or inconsistent with, the relevant statutory provisions. *See Kelly v. Indus. Accident Bd.,* 358 S.W.2d 874, 876–77 (Tex. Civ.App.—Austin 1962, writ ref'd). By imposing burdens on the injured worker beyond those authorized in the statute, he argues, the Commission has exceeded its authority in drafting Rule 130.5(e).

Associated Indemnity responds that Rule 130.5(e) legitimately implements the Act, which mandates that an impairment rating be assigned and that any dispute be addressed with an additional examination of the claimant. *See* Tex. Lab.Code Ann. §§ 408.123(a), .125(a) (West 1996). Associated Indemnity asserts that the rule "simply gives the claimant a time frame within which he or she must dispute an impairment rating so that the determination of benefits may be finalized." Such a rule, Associated Indemnity states, serves the important goals of (1) preventing claims from continuing indefinitely, and (2) encouraging doctors to initially assign the correct MMI and impairment rating. Furthermore, Associated Indemnity urges that the appellant's challenge to the 90–day Rule is foreclosed by the supreme court's decisions in *Rodriguez,* 997 S.W.2d 248, and *Lumbermens Mutual Casualty Co. v. Manasco,* 971 S.W.2d 60 (Tex.1998). We will first address the impact of the holdings in *Rodriguez* and *Manasco* on this appeal.

## The *Rodriguez* Decision

Rosa Rodriguez suffered a back injury on the job. She reached MMI and was assigned an impairment rating. Approximately six months after her injury, Rodriguez's condition deteriorated and her doctor recommended surgery. Rodriguez asked the Commission to change her impairment rating. At that time, hearing officers of the Commission had recognized certain ad hoc exceptions to the 90–day Rule, for example, when a claimant demonstrated a substantial change of condition, a significant medical error, or a clear misdiagnosis. *Rodriguez,* 997 S.W.2d at 254. The hearing officer determined that none of these exceptions applied to rescue Rodriguez from the finality imposed by her failure to dispute her impairment rating within ninety days.[4] From this ruling Rodriguez appealed.

The supreme court considered two questions in *Rodriguez:* (1) the proper standard of review for an injured worker's appeal of the impairment rating's finality under Rule 130.5(e), and (2) whether Rule

---

3. The Act does not provide any deadline per se for disputing either the MMI or the impairment rating.

4. The Commission appeals panel affirmed. *Rodriguez v. Serv. Lloyds Ins. Co.,* 997 S.W.2d 248, 252 (Tex.1999). Rodriguez then sued the insurance carrier in district court. The district court sustained the insurance carrier's

special exceptions to Rodriguez's pleadings and ordered Rodriguez to replead seeking relief reviewable under the substantial evidence rule. She did so, but failed to further comply with the district court's orders for repleading. The district court dismissed Rodriguez's cause of action. The First Court of Appeals affirmed. *Id.*

130.5(e) as written was subject to any exceptions. *Id.* at 251. The court held that the appropriate standard of review was modified de novo, and that the plain language of Rule 130.5(e) did not permit the Commission's hearing officers to infer any exceptions on a case-by-case basis. *Id.*

Rodriguez had argued that the Commission erred in not finding that she was entitled to an exception from Rule 130.5(e) based on a substantial change of condition. Instead, the supreme court found that the Commission could not grant individual exceptions to the 90–day Rule through adjudicative decisions but must follow the rulemaking procedures established in the Administrative Procedure Act [5] (the APA):

> A presumption favors adopting rules of general applicability through the formal rulemaking procedures as opposed to administrative adjudication.... Under these [rulemaking] procedures the agency must provide notice, publication, and invite public comment.... In this way, the APA assures that the public and affected persons are heard on matters that affect them and receive notice of new rules.

*Id.* at 255 (citations omitted). The court noted that the APA rulemaking procedures were designed to avoid the very problem the Commission created by informally amending the 90–day Rule on a case-by-case basis:

> We are unable to ascertain whether all Commission appeals panels or contested case hearing officers recognize these exceptions or are obligated to apply them consistently in all cases. And reading the Commission's rules would not give an employee or insurance carrier notice of these exceptions to the 90–day Rule.... Therefore, we do not recognize the ad hoc exceptions to the 90–day Rule that Rodriguez argues, including substantial change of condition.

*Id.* at 255–56 (citations omitted).[6]

Like Rodriguez, Fulton was denied an ad hoc exception to the 90–day Rule. The holding in *Rodriguez*, decided after Fulton's contested case hearing, forecloses any claim in this appeal that he was entitled to an ad hoc exception. Fulton, however, raises a different complaint—that the 90–day Rule is invalid because the Commission has imposed a burden on the injured worker contrary to the language and objectives of the Act. Our resolution of this issue is in no way controlled by the su-

---

**5.** *See* Tex. Gov't Code Ann. §§ 2001.001–.038 (West 2000).

**6.** In response to the harsh effects of the *Rodriguez* decision, the Commission amended Rule 130.5 to include the exceptions previously applied on an ad hoc basis. The amended rule reads in relevant part:

(e) The first certification of MMI and impairment rating assigned to an employee is final if the certification of MMI and/or the impairment rating (IR) is not disputed within 90 days after written notification of the MMI and IR is sent by the Commission to the parties, as evidenced by the date of the letter, unless based on compelling medical evidence the certification is invalid because of:

(1) a significant error on the part of the certifying doctor in applying the appropriate AMA Guides and/or calculating the impairment rating;

(2) a clear mis-diagnosis or a previously undiagnosed medical condition; or

(3) prior improper or inadequate treatment of the injury which would render the certification of MMI or impairment rating invalid.

(f) This rule applies to certifications of MMI and impairment ratings that have not become final prior to the effective date of this rule.

28 Tex. Admin. Code § 130.5(e)-(f) (2001); *see also* 25 Tex. Reg. 2102, 2105 (2000). Both parties agree that the current version of Rule 130.5 has no application in this case.

preme court's holding in *Rodriguez* that the Commission may not informally amend Rule 130.5(e) by granting individual exceptions in adjudicative hearings.

## The *Manasco* Decision

Stan Manasco injured his back on the job and upon reaching MMI was assigned a thirty-percent impairment rating. His employer's insurance carrier disputed the rating and the Commission appointed a doctor to reevaluate Manasco. That doctor determined that Manasco's impairment rating was seven percent. Manasco disputed the second rating. His dispute proceeded through a benefit review conference and a contested case hearing. At both stages, Manasco lost. At the contested case hearing, the hearing officer concluded that the correct impairment rating was seven percent. Manasco failed to seek an administrative appeal, and the seven-percent rating became final. *See* Tex. Lab.Code Ann. § 410.169 (West 1996). Three months later, Manasco's condition deteriorated and his doctor recommended surgery.

Manasco relied on Labor Code section 410.307, entitled "Substantial Change of Condition," to argue that because he had suffered a substantial change of condition, he could reopen the issues of MMI and impairment rating, even though he had previously failed to exhaust his administrative remedies. *See id.* § 410.307. The Commission held that section 410.307 did not entitle Manasco to present additional evidence when his impairment rating had become final. The district court affirmed. The court of appeals reversed, construing section 410.307 to allow the district court to consider evidence of Manasco's substantial change of condition, even though he had failed to appeal the initial impairment rating from the contested case hearing.

The issue presented to the supreme court was: "[W]hether a workers' compensation claimant who failed to appeal his original impairment rating can reopen the issue months later by arguing, under Texas Labor Code section 410.307, that a 'substantial change of condition' has occurred." *Manasco*, 971 S.W.2d at 61. The supreme court answered that section 410.307 is a rule of evidence that applies when a worker seeks judicial review of a Commission decision, but that it does not act as a safety valve to excuse the claimant from exhausting his administrative remedies before seeking judicial review. *Id.* at 63. Stated another way, *Manasco* holds that section 410.307 does not provide the claimant an alternative path to judicial review.

Fulton does not rely on section 410.307 to reopen his MMI certification and impairment rating. Thus, his challenge to the validity of the 90–day Rule is not controlled by the *Manasco* decision.[7]

## The 90–day Rule

■■■■ To determine whether an agency rule exceeds statutory authority, we ascertain whether the rule is in harmony with the general objectives of the statute. *Int'l Ins. Agency, Inc. v. R.R. Comm'n*, 893 S.W.2d 204, 207 (Tex.App.—Austin 1995, writ denied). To make this determination, we must look not only to a particular provision of the act, but to all applicable provisions. *Id.* As in all questions of statutory

---

7. Associated Indemnity refers us to the following language in *Manasco:*

   If the Legislature had wanted to provide an open-ended means to challenge an impairment rating, it could have done so; instead, the Legislature provided a narrow exception to allow a claimant to present evidence

of substantial change of condition that is discovered for the first time during the appeal process.

*Lumbermens Mut. Cas. Co. v. Manasco,* 971 S.W.2d 60, 64 (Tex.1998). This language has no bearing on the validity of the 90–day Rule.

interpretation, our goal is to determine and give effect to the legislature's intent. *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 960 (Tex.1999). We accomplish this task by first looking to the statute's plain and common meaning. *Id.*

We liberally construe workers' compensation legislation to carry out its evident purpose of compensating injured workers and their dependents. *Id.* at 961. An agency may not supply by implication restrictions on an employee's rights that are not found in the plain language of the Act. *See Kroger Co. v. Keng*, 23 S.W.3d 347, 349 (Tex.2000). In construing the Act, we may consider the circumstances under which it was enacted, former statutory provisions, including laws on this or similar subjects, and the consequences of a particular construction. *Id.* Like the supreme court in *Kroger*, we look to *Texas Workers' Compensation Commission v. Garcia*, 893 S.W.2d 504 (Tex.1995), for guidance.

In *Garcia*, the supreme court upheld the constitutionality of the Act. In considering the open-courts challenge to the Act, the supreme court held that the relevant test was whether the Act replaced a worker's common-law negligence cause of action with a meaningful alternative remedy. *Id.* at 520 (citing *Trinity River Auth. v. URS Consultants, Inc.*, 889 S.W.2d 259, 261 (Tex.1994)). It determined that by providing a limited but more certain recovery, the statute established a quid pro quo that would pass constitutional muster if the limited remedies were "adequate." *Id.* at 521. The supreme court rejected the court of appeals' holding that impairment is not an

accurate measure of the economic hardship that a worker will suffer from an injury, and that the fifteen percent impairment threshold for supplemental benefits denied long-term awards to seriously disabled workers. *Id.* at 521–22. The court then pronounced the combination of lifetime medical benefits, temporary income benefits during convalescence, impairment benefits, and long-term income replacement for seriously disabled workers an adequate substitute for a worker's negligence remedies. *Id.* at 523.

The *Garcia* court next rejected a constitutional challenge to the Act's definition of MMI that terminates temporary medical benefits after two years, regardless of whether the claimant's condition has actually stabilized. *Id.* at 525. The supreme court noted that temporary income benefits are "a major benefit" under the Act, and restricting those benefits to a two-year period was only justified by medical testimony that most workers' conditions stabilize within that time frame.[8] *Id.* Under this rationale, a rule that cuts off temporary income benefits *before* the worker's condition has had two years to stabilize might be deemed arbitrary and might call into question the adequacy of the entire statutory quid pro quo approved in *Garcia*.

The statutory right to challenge an impairment rating is derived from Labor Code section 408.125(a), which reads: "If an impairment rating is disputed, the commission shall direct the employee to be examined by a designated doctor chosen by mutual agreement of the parties." Tex. Lab.Code Ann. § 408.125(a). Rule 130.5 provides procedures for insurance carriers

---

8. The court explained that even when the medical condition has not stabilized after two years, the claimant will benefit from an inflated impairment rating. *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 525 (Tex. 1995). The court stated, "If the claimant is still recovering after two years, the impairment rating, which is determined at maximum medical improvement, will be higher than the actual degree of permanent impairment." *Id.*

to dispute an impairment rating and to request selection of a designated doctor to assess impairment. 28 Tex. Admin. Code § 130.5(a)-(d) (2000). The Labor Code does not mention disputes to an MMI certification, but both parties agree that the claimant may challenge an MMI assessment. Rule 130.6 states that an employee may give notice to the Commission that the MMI certification or impairment rating is being disputed. *Id.* § 130.6(a) (2000). Rule 130.6 does not impose a deadline for disputing MMI certification.

In its amicus brief, the Commission recognizes that the Act contemplates disputes to MMI certification because an impairment rating cannot be assessed without first determining the claimant's MMI. Notably, the supreme court has commented that the MMI and the impairment rating are inexorably intertwined. *See Rodriguez,* 997 S.W.2d at 254 ("Any dispute that challenges an impairment rating's finality necessarily implicates the date of maximum medical improvement...."). The Commission has repeatedly determined that a claimant's MMI certification and impairment rating become final together or not at all, and that a dispute of an impairment rating prevents an MMI certification from becoming final. Tex. Workers' Comp. Comm'n, Docket No. EP-92-056244-02-CC-EP41 (Feb. 1, 1993); Tex. Workers' Comp. Comm'n, Docket No. FW-92-050832-01-CC-FW42 (Nov. 12, 1992); Tex. Workers' Comp. Comm'n, Docket No. BU-91-102266-02-92-CC-BU41 (Sept. 17, 1992).

The 90-day Rule restricting the time period for disputing an impairment rating implicitly limits a claimant's time period for revisiting the assessment of his MMI.

*See* Tex. Workers' Comp. Comm'n, Docket No. EP-92-056244-02-CC-EP41. Approximately six months passed before Fulton had reason to question his MMI date and his impairment rating. When his pain reoccurred, Fulton realized his dilemma: his MMI had been prematurely assessed because his condition had not yet stabilized. By that time, Fulton was beyond the ninety-day deadline for disputing his impairment rating, the single act that would have prevented his MMI certification from becoming final. Fulton was foreclosed from reevaluating his MMI certification because of the 90-day Rule for challenging his impairment rating. When his impairment rating became final, so did the determination of his MMI.

Fulton argues that Rule 130.5(e)'s explicit deadline for disputing his impairment rating operates as an implicit deadline for establishing his final MMI,[9] and that the rule's arbitrary ninety-day deadline from the date temporary income benefits begin impermissibly restricts the statutory deadline of 104 weeks for establishing a final MMI. Fulton asserts that the Commission has exceeded its statutory authority by enacting a rule that imposes burdens not included in the statute and thus the rule must be declared invalid. *See Kelly,* 358 S.W.2d at 877.

The Act declares that the deadline for assessing MMI shall be the earlier of:

(A) the earliest date after which, based on reasonable medical probability, further material recovery from or lasting improvement to an injury can no longer reasonably be anticipated;

**9.** The rule that Fulton challenges *implicitly* limited MMI disputes. *See* 28 Tex. Admin. Code § 130.5(e) (2000). Amended Rule 130.5(e) *explicitly* limits the time for disputing MMI certification as well as impairment ratings. 28 Tex. Admin. Code § 130.5(e) (2001).

(B) the expiration of 104 weeks from the date on which income benefits begin to accrue; or

(C) the date determined [by statute for spinal surgery].

Tex. Lab.Code Ann. § 401.011(30). The Act, then, "establishes what is in essence a two year cap on temporary income benefits for *all* claimants" whether or not the claimant's condition has stabilized. *Garcia*, 893 S.W.2d at 525.

■ A rule that imposes a ninety-day time limit for a claimant's MMI assessment to become final is at odds with the constitutionally significant 104 week time period under the Act as recognized in *Garcia*. *Id.*; Tex. Lab.Code Ann. § 401.011(30). The legislature placed a two-year cap on the period that a claimant may wait to reach MMI. Tex. Lab.Code Ann. § 401.011(30). Nothing in the statute suggests that the two-year period may be shortened. By enacting the 90–day Rule, the Commission has effectively shortened the time period in which an injured worker may revisit the issue of maximum medical improvement. The plain language of the statute allows up to two years for MMI to be reached. *Id.* Doctors may believe a claimant's condition has stabilized and assess an earlier MMI date; despite all reasonable medical probability, that claimant's condition may deteriorate within the two-year time period. Nothing in the statute would foreclose reevaluating that claimant's medical condition within the two-year period; indeed, the statute specifically gives an injured worker up to two years to reach maximum medical improvement. *Id.* Because Rule 130.5(e) severely restricts the statutory time period for assessing a final MMI, we hold that the agency exceeded its authority in enacting the rule.

The dispute before us illustrates the arbitrary burden the 90–day Rule imposes.

Fulton's doctors all agreed that their assessment of his MMI was premature and should be rescinded. When did his deterioration occur? Under the plain language of the Act, if a worker's condition deteriorates within the two-year period, it may be reevaluated; if it deteriorates more than two years after income benefits begin to accrue, the worker has no recourse. *Id.* This is the balance struck by the statutory scheme. The supreme court relied on the two-year period to hold this balance reasonable and not arbitrary. *Garcia*, 893 S.W.2d at 525. Rule 130.5(e) imposes a ninety-day period for reevaluation of a worker's medical condition. 28 Tex. Admin. Code § 130.5(e). Fulton's condition deteriorated within six months, so the 90–day Rule, but not the Act, prevented his doctors from reassessing his MMI. We hold the rule arbitrary and invalid because it impermissibly shortens the statutory time period allotted to an injured worker to achieve MMI.

The Commission, as amicus, argues that section 401.011(30) does not give a claimant up to two years to *challenge* an MMI certification because it permits certification prior to the end of the two years based on "reasonable medical probability" that "further material recovery ... can no longer reasonably be anticipated." *See* Tex. Lab.Code Ann. § 401.011(30)(A). The supreme court has noted that the Commission previously read that section to permit *revisiting* the MMI assessment anytime before the 104 week deadline. *See Rodriguez*, 997 S.W.2d at 258 (Phillips, C.J., concurring). After a draft of Rule 130.5(e) was published for public comment, a critic complained that the proposed ninety-day deadline was unnecessary and would preclude revisiting an impairment rating. *Id.* The Commission defended its rule, stating that "allowing the impairment rating to be revisited would only allow a

doctor to assign an inappropriate impairment rating to begin with, which should be discouraged. Additionally, *after the 104 week MMI ... threshold has been reached, MMI cannot be revisited.*" *Id.* (citing 16 Tex. Reg. 177 (1991)) (emphasis added).

Both parties agree that the Act permits disputes to MMI certification even though the Act does not specifically so provide. Section 401.011(30)'s language states, " 'Maximum medical improvement' *means*" before defining the time frames for determining MMI. Tex. Lab.Code Ann. § 401.011(30) (emphasis added). We will not add to this definition a reading that once MMI is assessed, it becomes final by some arbitrary deadline not contained in the statute; we may not imply restrictions on injured employees that are not found in the plain language of the Act. *See Kroger,* 23 S.W.3d at 349.

We hold that section 401.011(30) establishes a 104 week deadline for a worker to achieve maximum medical improvement. The Commission may not, by rule, shorten this statutory period. *See id.* To do so would impose restrictions in excess of those imposed by the Act. *See Kelly,* 358 S.W.2d at 877. We declare Rule 130.5(e) invalid to the extent it prevents a reassessment of MMI certification because the impairment rating or MMI was not disputed within ninety days. Nothing in the statute prevents revisiting the MMI if a deterioration in medical condition occurs within the statutory 104 week period. The statute affords Fulton two years for his medical condition to stabilize. No rule may diminish that time allotment.

Because the rule is invalid, we hold that the trial court erred in granting summary judgment in favor of Associated Indemnity and in denying Fulton's motion for summary judgment. We sustain Fulton's points of error.

## CONCLUSION

We hold that Rule 130.5(e) imposed on Fulton a restriction in excess of that found in the plain language of the Act and that Fulton's MMI certification, and therefore his impairment rating, did not become final. We reverse the trial court's order granting Associated Indemnity summary judgment and render summary judgment in favor of Fulton.