# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00077-CV

**Norman Engel, Appellant**

**v.**

**Texas Department of Insurance–Division of Workers' Compensation; Commissioner Cassie Brown, in Her Official Capacity; The State of Texas and the Attorney General of the State of Texas by and through Ken Paxton in His Official Capacity as Attorney General of the State of Texas; and Illinois National Insurance Company, Appellees**

### FROM THE 53RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-19-001342, THE HONORABLE KARIN CRUMP, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Norman Engel, after sustaining a workplace injury, sued his workers' compensation carrier, Illinois National Insurance Company, as well as various State of Texas parties, including the Texas Department of Insurance–Division of Workers' Compensation (TDI or the Division); Division Commissioner Cassie Brown in her Official Capacity; The State of Texas; and the Attorney General of the State of Texas by and through Ken Paxton in his Official Capacity. The trial court granted the pleas to the jurisdiction of the State parties and the motion for summary judgment of the insurance carrier. On appeal, Engel raises constitutional, statutory-conflict, and delegation issues. We will affirm.

**ISSUES**

Engel sought to allege four complaints against the State parties: (1) a rule challenge regarding delegation of the "Official Disability Guidelines" (ODG), *see* 28 Tex. Admin. Code § 137.100 (2024) (Texas Division of Workers' Compensation, Treatment Guidelines); (2) a statutory conflict between the 90-day deadline for challenging a previously assessed Maximum Medical Improvement (MMI) date and either the one-year deadline for filing a workers' compensation claim or the 104-week maximum for certification of any claimant's MMI; (3) arguably seeking a declaration of his rights under the Texas Workers' Compensation Act (WCA), Tex. Lab. Code §§ 401.001–419.007; and (4) a challenge to the constitutionality of all or part of the WCA. His complaint against the insurance carrier relied on the foregoing issues.

**STATUTORY FRAMEWORK**

The history and general statutory framework of the WCA has been set forth in detail in other court opinions and will not be repeated here except as necessary to put the current issues in context. *See, e.g.*, *Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 510–16 (Tex. 1995); *Holt v. Texas Dep't of Ins.-Div. of Workers' Comp.*, No. 03-17-00758-CV, 2018 WL 6695725, at *2–4 (Tex. App.—Austin Dec. 20, 2018, pet. denied) (mem. op.); *see also Kroger Co. v. Keng*, 23 S.W.3d 347, 349–50 (Tex. 2000). Because Section 408.123 of the Labor Code plays a central role in this case, however, we set forth the history of that provision below.

A claimant's MMI date is important because "[u]ntil an employee reaches maximum medical improvement, he or she may receive temporary income benefits [but] [o]nce an employee reaches maximum medical improvement, temporary income benefits end." *Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d 248, 253 (Tex. 1999). From the enactment of the Labor

Code in 1993—and even before—the WCA had set 104 weeks as the maximum time for any claimant's MMI to be reached:

> "Maximum medical improvement" means the earlier of: (A) the earliest date after which, based on reasonable medical probability, further material recovery from or lasting improvement to an injury can no longer reasonably be anticipated; or (B) the expiration of 104 weeks from the date on which income benefits begin to accrue.

Tex. Lab. Code, Act of May 12, 1993, 73rd Leg., R.S., ch. 269, § 1, Sec. 401.011 (30), 1993 Tex. Gen. Laws 987, 1132, codified at Tex. Lab. Code § 401.011(30). Subject to the foregoing, the provision relating to the medical certification of a claimant's MMI did not at that time contain any deadline for disputing an MMI assessment:

> Sec. 408.123. CERTIFICATION OF MAXIMUM MEDICAL IMPROVEMENT; EVALUATION OF IMPAIRMENT RATING.
>
> (a) After an employee has been certified by a doctor as having reached maximum medical improvement, the certifying doctor shall evaluate the condition of the employee and assign an impairment rating using the impairment rating guidelines described by Section 408.124. If the certification and evaluation are performed by a doctor other than the employee's treating doctor, the certification and evaluation shall be submitted to the treating doctor, and the treating doctor shall indicate agreement or disagreement with the certification and evaluation.
>
> (b) A certifying doctor shall issue a written report certifying that maximum medical improvement has been reached, stating the employee's impairment rating, and providing any other information required by the commission to:
>
> > (1) the commission;
> >
> > (2) the employee; and
> >
> > (3) the insurance carrier.
>
> (c) If an employee is not certified as having reached maximum medical improvement before the expiration of 102 weeks after the date income benefits

3

begin to accrue, the commission shall notify the treating doctor of the requirements of this subchapter.

*Id.* Sec. 408.123, 1993 Tex. Gen. Laws 987, 1185.

TDI subsequently adopted former administrative rule 130.5(e) that effectively prohibited a claimant from challenging his MMI certification more than 90 days after receiving notice of the assessment. *See* 28 Tex. Admin. Code § 130.5(e) (2000) (Texas Workers' Compensation Comm'n, Impairment and Supplemental Income Benefits). In 2001, in *Fulton v. Associated Indemnity Corp.*, 46 S.W.3d 364 (Tex. App.—Austin 2001, pet. denied), this Court struck down the agency's 90-day rule, holding that TDI had exceeded its authority because the rule "effectively shortened the time period in which an injured worker may revisit the issue of maximum medical improvement." *Id.* at 371–73.

In 2003, presumably in response to this Court's ruling in *Fulton*, the Legislature amended Section 408.123 of the Labor Code to add its own statutory 90-day deadline for challenging an MMI assessment:

> Except as otherwise provided by this section, an employee's first valid certification of maximum medical improvement and first valid assignment of an impairment rating is final if the certification or assignment is not disputed before the 91st day after the date written notification of the certification or assignment is provided to the employee and the carrier by verifiable means.

Act of May 30, 2003, 78th Leg., R.S. ch. 1323, § 2, Sec. 408.123(d), 2003 Tex. Gen. Laws 4882, 4882. Though since renumbered, the current version of the statute reads the same. *See* Tex. Lab. Code § 408.123(e). For ease of understanding, we will refer to Section 408.123(e) as the "90-day law."

## FACTUAL AND PROCEDURAL BACKGROUND

On March 6, 2017, Engel, a carpenter, sustained a ruptured bicep while in the course of his employment. His employer's workers' compensation carrier was Illinois National. On March 24, Engel underwent surgery to repair the injury. The surgery was not disputed and was paid for by Illinois National. After returning to work a week later wearing a sling, Engel gradually returned to regular duty.

On July 18, 2017, a "designated doctor" selected by the Division examined Engel and certified that he had reached MMI on that date, with a 6% permanent impairment rating (IR). The evidence indicated that the doctor's certification was delivered to Engel on July 31, 2017.

On February 18, 2018, Engel suffered a re-rupture of his bicep and had a second surgery on March 19, 2018. He was unable to work for a substantial period of time after that surgery. On April 20 of that year, Engel filed a dispute of his earlier July 18, 2017 MMI certification, based in part on alleged inadequate initial treatment.

On July 5, 2018, an MRI revealed yet another re-rupture of Engel's bicep. A third surgery was recommended, but the record does not reflect whether that surgery has ever taken place.

On October 29, 2018, an administrative hearing was held on Engel's MMI dispute. The Division administrative law judge assigned to the case found that Engel failed to establish that his initial treatment was inadequate or that any other exception applied that would allow his assessed MMI date to be changed. The ALJ disallowed Engel's dispute based on the 90-day law. That ruling forms the basis of Engel's primary complaint in this case.

Engel filed a suit for judicial review of the administrative decision in the district court of Travis County, raising constitutional, statutory-conflict, and delegation issues. The trial

5

court granted the State parties' pleas to the jurisdiction and Illinois National's motion for summary judgment. Engel perfected this appeal.

## DISCUSSION

### *Pleas to the jurisdiction*

A plea to the jurisdiction challenges the court's subject-matter jurisdiction to hear the case, which is a question of law that we review de novo. *Harris Cnty. v. Annab*, 547 S.W.3d 609, 612 (Tex. 2018). The State and its agencies "are immune from suit and liability in Texas unless the Legislature expressly waives sovereign immunity." *Texas Health & Hum. Servs. Comm'n v. Pope*, 674 S.W.3d 273, 280 (Tex. 2023) (quoting *State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009)). An agency may assert its immunity in a plea to the jurisdiction. *Id.*

In their pleas to the jurisdiction, the State parties here challenged the adequacy of Engel's pleadings to show a waiver of immunity but did not present evidence to refute the factual allegations in his petition. In those circumstances,

> "we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." In determining whether the plaintiff has met that burden, "we liberally construe the pleadings, taking all factual assertions as true and looking to [the plaintiff's] intent."

*Texas Dep't of Crim. Just. v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020) (quoting *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004), and *City of Ingleside v. City of Corpus Christi*, 469 S.W.3d 589, 590 (Tex. 2015)).

### *State Defendants as Proper Parties*

In his Issue No. 3, which we address first, Engel asserts that the trial court erred in granting the pleas to the jurisdiction of the State parties and the motion for summary judgment of

Illinois National. We will initially address the trial court's dismissal of the State parties and later address the trial court's grant of summary judgment in favor of Illinois National.

## A. Cassie Brown, Commissioner

Among the State parties named by Engel as defendants was Cassie Brown in her official capacity as Commissioner of the Worker's Compensation Division of TDI. As a government official sued in her official capacity, Brown, like the State entities, enjoyed sovereign immunity unless she acted without legal authority or failed to perform a purely ministerial act. *See Van Boven v. Freshour*, 659 S.W.3d 396, 401 (Tex. 2022). Sovereign immunity does not bar a claim against a government officer for acting without legal authority or for failing to perform a purely ministerial act, a claim known as an ultra vires suit. *Id.*

Although Engel named Brown as a defendant, his petition did not plead an ultra vires claim against her. Accordingly, her sovereign immunity was not waived, and the trial court did not err in granting her plea to the jurisdiction.

## B. The State of Texas and the Texas Attorney General

Also named as defendants were the State of Texas and the Texas Attorney General, both of whom likewise enjoyed sovereign immunity. No ultra vires claim was brought against Ken Paxton as Attorney General, so to the extent he was sued in his official capacity, the trial court did not err in granting his plea to the jurisdiction.

As to the State of Texas, it is well established that "[d]eclaratory-judgment claims challenging the validity of a statute may be brought against the *relevant* governmental entity." *Abbott v. Mexican Am. Legis. Caucus, Texas House of Representatives*, 647 S.W.3d 681, 698 (Tex. 2022) (emphasis added). Texas courts have held, however, that a governmental entity is not a

relevant defendant unless that entity has some ability to enforce the challenged statute. In *Holt v. Texas Dep't of Ins.–Div. of Workers. Comp.*, No. 03-17-00758-CV, 2018 WL 6695725, at \*5 (Tex. App.—Austin Dec. 20, 2018, pet. denied) (mem. op.), this Court held that the State of Texas and Texas Attorney General did not have the requisite ability to enforce the WCA and therefore were not proper parties in a suit challenging the constitutionality of the Act. The Texas Supreme Court has recently cited *Holt* and similar cases approvingly:

> Though we have not been presented with the precise issue, our courts of appeals have generally held that challenges to the constitutionality of a statute are not properly brought against the State in the absence of an "enforcement connection" between the challenged provisions and the State itself. *Paxton v. Simmons*, 640 S.W.3d 588, 602–03 (Tex. App.—Dallas 2022, no pet. h.); *Ector Cnty. All. of Bus. v. Abbott*, No. 11-20-00206-CV, 2021 WL 4097106, at \*10 (Tex. App.—Eastland Sept. 9, 2021, no pet.); *see also Holt v. Tex. Dep't of Ins.–Div. of Workers. Comp.*, No. 03-17-00758-CV, 2018 WL 6695725, at \*5 (Tex. App.—Austin Dec. 20, 2018, pet. denied).

*Abbott*, 647 S.W.3d at 696–97.

In the present case, as in *Holt*, the State of Texas itself does not have a sufficient "enforcement connection" with the WCA to justify a waiver of sovereign immunity. The trial court therefore did not err in granting the State's plea to the jurisdiction and dismissing it as a defendant.

## C. The Texas Department of Insurance–Division of Workers' Compensation

TDI does have the authority and ability to enforce the WCA, so it is not prevented from being a proper defendant for the reasons applicable to the State of Texas. Nonetheless, as a state agency, TDI is protected by sovereign immunity from most lawsuits. *See Pope*, 674 S.W.3d at 280. An exception to that rule, however, exists when a suit challenges the constitutionality of a statute. *Mexican Am. Legis. Caucus*, 647 S.W.3d at 696–98 ("[T]he UDJA generally waives

8

immunity for declaratory-judgment claims challenging the validity of statutes . . . .").  Engel raises such a constitutional challenge here.

We recognize, of course, that even when a constitutional violation is alleged, sovereign immunity is not waived where the plaintiff's claim is facially invalid.  *See Klumb v. Houston Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 13 (Tex. 2015) ("While it is true that sovereign immunity does not bar a suit to vindicate constitutional rights, . . . immunity from suit is not waived if the constitutional claims are facially invalid.").  As stated above, because the issue of sovereign immunity invokes the trial court's jurisdiction, it is a question of law that we review de novo. Accordingly, we must likewise review the question of facial invalidity de novo.  The merits of Engel's constitutional claim will be discussed later in this opinion.

### *Rule challenge regarding the ODG*

In his Issue No. 2, Engel complains that TDI Rule 137.100 unlawfully delegates rulemaking authority to a "private company."  Rule 137.100 provides in pertinent part: "Health care providers shall provide treatment in accordance with the current edition of the Official Disability Guidelines-Treatment in Workers' Comp . . . (ODG), published by Work Loss Data Institute (Division treatment guidelines) . . . ."  28 Tex. Admin. Code § 137.100(a).  Engel asserts that TDI has, through Rule 137.100, "impermissibly allowed a private company to adopt rules without proper oversight by the state agency and without proper adoption by the DWC Commissioner."

We note initially that this Court has previously addressed and approved the validity of the ODG, though not in the context of a delegation challenge:

> By statute, the DWC [Texas Department of Insurance's Division of Workers' Compensation] commissioner is required to adopt treatment guidelines that are

9

> "evidence-based, scientifically valid, and outcome-focused and designed to reduce excessive or inappropriate medical care while safeguarding necessary medical care." Tex. Lab. Code § 413.011(e). The DWC has adopted such guidelines in the form of the Official Disability Guidelines (ODG) published by the Work Loss Data Institute, and health care provided in accordance with the ODG is presumed to be "reasonably required" as defined by section 401.011(22–a) of the Labor Code. 28 Tex. Admin. Code § 137.100(a), (c). Thus, it follows that treatment specified in the ODG constitutes "evidence based medical evidence" of health care that is "reasonably required."

*Figari v. Travelers Indem. Co. of Conn.*, No. 03-12-00664-CV, 2014 WL 7466768, at *2 (Tex. App.—Austin Dec. 16, 2014, pet. denied) (mem. op.).

More importantly for our purposes, Engel has challenged Rule 137.100 only through the Texas Uniform Declaratory Judgments Act (UDJA), Tex. Civ. Prac. & Rem. Code §§ 37.001–.011. He did not challenge the rule through the appropriate section of the Texas Administrative Procedure Act (APA). *See* Tex. Gov't Code § 2001.038(a) ("The validity or applicability of a rule . . . may be determined in an action for declaratory judgment if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff.").

In *Holt*, in which this Court addressed the identical issue presented here, we held that the UDJA, by itself, "does not waive immunity for challenges to a rule." *See Holt*, 2018 WL 6695725, at *7 (citing *Texas Health & Human Servs. Comm'n v. Doe*, No. 03-16-00657-CV, 2017 WL 1534209, at *3 & n.2 (Tex. App.—Austin Apr. 20, 2017, pet. denied) (mem. op.)). It is well established that "sovereign immunity bars UDJA actions against the state and its political subdivisions *absent a legislative waiver*." *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 620 (Tex. 2011) (emphasis added). The legislative waiver that allows a party to challenge an agency rule comes only through Section 2001.038 of the APA. Accordingly, Engel's UDJA cause of action

10

challenging Rule 137.100 did not waive TDI's immunity, and the trial court did not err in dismissing that claim for lack of jurisdiction.

***Statutory conflicts***

In his Issue No. 1, Engel argues initially that the 90-day law conflicts with "the one-year law for an injured worker to file a claim for compensation and/or the 104 week statutory limit a worker is allowed to reach maximum medical improvement." We reject this contention.

First, the 90-day law cannot conflict with the one-year deadline, which is the cutoff point for *filing a claim*. *See* Tex. Lab. Code § 409.003(1) ("An employee or a person acting on the employee's behalf shall file with the division a claim for compensation for an injury not later than one year after the date on which: (1) the injury occurred . . . ."). The 90-day law, on the other hand, imposes a deadline for disputing an MMI that has previously been certified as part of an existing claim. *See id.* § 408.123(e). But if no workers' compensation claim has been filed, no MMI can be certified, so there would be no MMI to dispute. The existence of a certified MMI necessarily means that a workers' compensation `claim has already been filed. Therefore, there can be no conflict between the one-year deadline for filing a claim and the 90-day law's deadline for disputing an MMI.

Next, Engel asserts that the 90-day law's deadline for disputing a claimant's MMI conflicts with the 104-week deadline for a claimant's MMI to be assessed. *See id.* § 401.011(30). He argues that as a result of this conflict, the 104-week deadline should prevail and the 90-day law should be disregarded.

When two statutes conflict, "it is the duty of the courts to resolve inconsistencies and effectuate the dominant legislative intent." *Texas Dep't of Pub. Safety v. Schaejbe*, 687 S.W.2d 727, 728 (Tex. 1985) (citing *Southern Canal Co. v. State Bd. of Water Eng'rs*, 318 S.W.2d 619

11

(Tex.1959)). We strive to harmonize conflicting statutes, if possible. *Ferrell v. University of Tex. Sys.*, 583 S.W.3d 805, 809 (Tex. App.—El Paso 2019, no pet.) (citing *Texas Indus. Energy Consumers v. CenterPoint Energy Hous. Elec., L.L.C.*, 324 S.W.3d 95, 107 (Tex. 2010)). When two statutes are found to be irreconcilable, however, "the statute latest in date of enactment prevails." *City of Dallas v. Employees' Ret. Fund of City of Dallas*, 687 S.W.3d 55, 61 (Tex. 2024) (quoting *Jackson v. State Off. of Admin. Hearings*, 351 S.W.3d 290, 297 (Tex. 2011)).

As support for his argument that we should disregard the 90-day law, Engel relies heavily on *Fulton*, in which this Court invalidated an administrative rule adopted by TDI that imposed a 90-day deadline for disputing an MMI. *See Fulton*, 46 S.W.3d at 373. We held that the agency exceeded its authority in adopting the rule because it was "at odds with the constitutionally significant 104-week time period under the Act." *Id*.

*Fulton* is inapplicable here, however, because it involved an administrative rule, whereas the present case involves an amendment to the relevant statute. An agency rule is void if it conflicts with a statute. *Liberty Mut. Ins. Co. v. Griesing*, 150 S.W.3d 640, 648 (Tex. App.—Austin 2004), *pet. dism'd w.o.j.*, 251 S.W.3d 471 (Tex. 2007). The Legislature, however, has the power to modify or even repeal a statute by enacting an amendatory law. *See City of Dallas*, 687 S.W.3d at 60 ("[A] subsequent statute, revising the subject matter of a former one, and intended as a substitute for it, although it contains no express words to that effect, will operate a repeal of the former, to the extent to which its provisions are supplied or repealed."). While the WCA, including the 104-week deadline for determining a claimant's MMI, was enacted as part of the Labor Code in 1993, the Legislature amended the Act in 2003 to add the 90-day deadline. Act of May 30, 2003, 78th Leg., R.S., ch. 1323, § 2, Sec. 408.123(d), 2003 Tex. Gen. Laws 4882, 4882,

12

now codified at Tex. Lab. Code § 408.123(e). Accordingly, even if we were to hold that the two statutes are in irreconcilable conflict, the 90-day law was the later enacted and so would prevail.

We decline Engel's invitation to disregard the 90-day law on the basis of a conflict with the WCA's 104-week deadline for determining a claimant's MMI.

### *Declaration of rights*

Although it is not clear from his petition or Appellant's Brief, Engel arguably seeks declaratory relief as to the proper construction of the WCA. To the extent he is seeking a declaration of his rights under the Act, this claim fails. "[T]he UDJA does not waive the state's sovereign immunity when the plaintiff seeks a declaration of his or her rights under a statute or other law." *Sefzik*, 355 S.W.3d at 621; *accord Texas State Libr. & Archives Comm'n v. Westmoreland*, No. 03-22-00276-CV, 2024 WL 1229480, at *5 (Tex. App.—Austin Mar. 22, 2024, no pet.).

TDI's sovereign immunity was not waived for this claim.

### *Constitutionality of the 90-day law and the WCA in general*

Engel's Appellant's Brief contains numerous general references to "constitutional challenges" but is somewhat vague as to which provisions of the Texas Constitution he claims have been violated; he appears to be basing his complaint on the Open-Courts and Due-Course-of-Law provisions: "All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." Tex. Const. art. I, § 13; *see also* Tex. Const. art. 1, § 19.

Not only are two provisions contained in the same section of the Texas Constitution, they prescribe essentially the same standard for evaluating a challenged statute. Regarding the

Open-Courts provision, for example, the Texas Supreme Court has stated that "[t]his provision, among other things, prohibits the Legislature from *unreasonably* restricting common law causes of action." *Thomas v. Oldham*, 895 S.W.2d 352, 357 (Tex. 1995) (emphasis added) (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 448 (Tex. 1993)). "When challenging a statute as unconstitutional on the basis that it restricts a common-law cause of action, the litigant must demonstrate that (1) the statute restricts a well-recognized common law cause of action; and (2) the restriction is *unreasonable* when balanced against the statute's purpose." *Jones v. Clark*, No. 14-22-00537-CV, 2023 WL 5556657, at *3 (Tex. App.—Houston [14th Dist.] Aug. 29, 2023, no pet.) (mem. op.) (emphasis added). Because the WCA restricts a well-recognized common law cause of action—the tort of negligence—and because the 90-day law effectively imposes a further extension of that restriction, we believe this standard is applicable here. We begin our analysis, of course, by presuming the 90-day law is valid. *See Tenet Hosps. Ltd. v. Rivera*, 445 S.W.3d 698, 701 (Tex. 2014) ("[W]e begin assessing a constitutional challenge with a presumption that the statute is valid.").

Regarding a Due-Course-of-Law challenge, the official commentary to this constitutional provision concisely summarizes the task of a court in evaluating the constitutionality of a statute:

> In substantive due process cases, the courts balance the gain to the public welfare resulting from the legislation against the severity of its effect on personal and property rights. Every exercise of the police power involves a restraint upon individual freedom of action or the free use of property based upon some social need which presumably justifies the restraint. Hence, a law is unconstitutional as violating due process when it is *arbitrary or unreasonable*, and the later occurs when the social necessity the law is to serve is not a sufficient justification of the restriction of liberty involved.

Tex. Const. art. I, § 19 interp. commentary (West 2007) (emphasis added).

Indeed, the two constitutional provisions have been held to provide the same protection: "While it is true that [Article I, Section 13] is sometimes referred to as the 'Open Courts Provision,' it is, quite plainly, a due process guarantee." *Sax v. Votteler*, 648 S.W.2d 661, 664 (Tex. 1983); *see also In re Dean*, 393 S.W.3d 741, 748 (Tex. 2012) ("[W]e have recognized that the open courts provision is a due process guarantee."). Accordingly, whether Engel's constitutional challenge is based on the Open-Courts provision or the Due-Course-of-Law provision, or both, the 90-day law will pass constitutional muster unless it is shown to be arbitrary or unreasonable.

Citing *Nelson v. Krusen*, 678 S.W.2d 918 (Tex. 1984), Engel first contends the 90-day law violates the Open-Courts provision by making it "practically impossible for a plaintiff to enforce his rights." In *Nelson* the lower courts had applied the two-year statute of limitations to deny a tort claim that could not reasonably have been discovered within two years. Reversing the court of appeals, the Texas Supreme Court held that "the legislature has no power to make a remedy by due course of law contingent on an impossible condition." *Id.* at 921.

Although the 90-day law here effectively reduced an injured worker's time for contesting his MMI and IR, the Legislature in 2005 added a still-current subsection to Section 408.123 requiring that after the certification of MMI the claimant must be given notice of his right to dispute his assessed MMI and IR:

> The commissioner shall adopt a rule that provides that, at the conclusion of any examination in which maximum medical improvement is certified and any impairment rating is assigned by the treating doctor, written notice shall be given to the employee that the employee may dispute the certification of maximum medical improvement and assigned impairment rating. The notice to the employee

must state how to dispute the certification of maximum medical improvement and impairment rating.

Tex. Lab. Code § 408.123(c).  TDI subsequently adopted such a rule:

> At the conclusion of an examination in which the treating doctor, or the certifying doctor in the event that the treating doctor is not authorized to certify MMI and assign an impairment rating, determines that the employee has reached maximum medical improvement and assigns an impairment rating, the doctor shall provide the employee with a written notice that the certification may be disputed.  The notice shall be provided as a separate document included with the Report of Medical Evaluation provided in accordance with § 130.1 of this title.  The notice must be provided in English, Spanish, or other language common to the employee, and shall include the following information:
>
> (A) the date of maximum medical improvement;
>
> (B) the assigned impairment rating;
>
> (C) a statement that the impairment rating may become final if not disputed within 90 days, and if the employee, or the employee's representative, disagrees with the certification, they may dispute the certification by contacting the Division of Workers' Compensation and requesting a benefit review conference;
>
> (D) the address and phone number of the local field office of the Division of Workers' Compensation (Division); and
>
> (E) a statement that the employee may contact the Division for more information at 1-800-252-7031.

28 Tex. Admin. Code § 130.2(a)(3) (Texas Division of Workers' Compensation, Certification of Maximum Medical Improvement and Evaluation of Permanent Impairment by the Treating Doctor).

We hold that the 90-day law does not rise to the level of making it "practically impossible" for a worker to enforce his right to dispute his assessed MMI date.

16

Engel next appears to assert that the addition of the 90-day law makes the WCA unconstitutional in its entirety. We disagree. The WCA has, from its inception, imposed a carefully crafted balance or trade-off between, on the one hand, limiting injured workers' common-law causes of action and, on the other hand, providing a certain though limited recovery. "The Legislature struck a balance between [providing compensation for injured employees and protecting employers from the costs of litigation] by permitting workers to 'recover from subscribing employers without regard to the workers' own negligence' while 'limiting the employers' exposure to uncertain, possibly high damages awards permitted under the common law.'" *Texas Mut. Ins. Co. v. PHI Air Med., LLC*, 610 S.W.3d 839, 843 (Tex. 2020) (quoting *SeaBright Ins. Co. v. Lopez*, 465 S.W.3d 637, 642 (Tex. 2015)).

Before the addition of the 90-day law, the supreme court specifically rejected an open-courts challenge to the WCA, concluding that the Act

> —[in] carrying forward the general scheme of the former act—provides benefits to injured workers without the necessity of proving negligence and without regard to the employer's potential defenses. In exchange, the benefits are more limited than the actual damages recoverable at common law. We believe this quid pro quo, which produces a more limited but more certain recovery, renders the Act an adequate substitute for purposes of the open courts guarantee.

*Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 521 (Tex. 1995).

Engel argues, in essence, that the 90-day law, added in 2003, alters the "trade-off" to such an extent that the overall balance provided by the WCA is no longer reasonable. He relies on two precedents. First, he cites the supreme court's statement in *Garcia* that the two-year—104 week—deadline for determining MMI was not unreasonable because that limit was supported by trial testimony: "Two years is not an arbitrary place to draw the line, as there was medical testimony at trial that most injured workers will actually reach maximum medical recovery within

17

that time period." *Id.* at 525. He points out that there is no testimony in the present case supporting a 90-day deadline to dispute an MMI.

It does appear that the selection of 90 days was somewhat arbitrary. We do not believe, however, that the absence of testimony—medical or otherwise—supporting the 90-day deadline is dispositive. The deadline appears to be intended merely to simplify and streamline the procedure for finalizing an injured worker's MMI and IR.

Second, he cites this Court's opinion in *Fulton*. As mentioned above, in *Fulton* we held that an administrative rule that imposed a 90-day deadline for an injured worker to challenge his MMI materially altered the statutory balance, such that the agency exceeded its authority in adopting the rule:

> A rule that imposes a ninety-day time limit for a claimant's MMI assessment to become final is at odds with the constitutionally significant 104 week time period under the Act as recognized in *Garcia*. The legislature placed a two-year cap on the period that a claimant may wait to reach MMI. Nothing in the statute suggests that the two-year period may be shortened. By enacting the 90–day Rule, the Commission has effectively shortened the time period in which an injured worker may revisit the issue of maximum medical improvement. The plain language of the statute allows up to two years for MMI to be reached. Doctors may believe a claimant's condition has stabilized and assess an earlier MMI date; despite all reasonable medical probability, that claimant's condition may deteriorate within the two-year time period. Nothing in the statute would foreclose reevaluating that claimant's medical condition within the two-year period; indeed, the statute specifically gives an injured worker up to two years to reach maximum medical improvement. Because Rule 130.5(e) severely restricts the statutory time period for assessing a final MMI, we hold that the agency exceeded its authority in enacting the rule.

> . . . . Under the plain language of the Act, if a worker's condition deteriorates within the two-year period, it may be reevaluated; if it deteriorates more than two years after income benefits begin to accrue, the worker has no recourse. This is the balance struck by the statutory scheme. The supreme court [in *Garcia*] relied on the two-year period to hold this balance reasonable and not arbitrary.

18

*Fulton*, 46 S.W.3d at 372 (citations omitted).[1]

In the present case, it is likewise true that the imposition of a 90-day deadline on an injured worker's right to challenge his previously assessed MMI could dramatically shorten the time for finally determining a claimant's MMI and IR. *See id.* at 373. But the statutory 90-day law contains several exceptions designed to ameliorate any potential harm or disadvantage to injured workers:

> An employee's first certification of maximum medical improvement or assignment of an impairment rating may be disputed after the [90-day] period described by Subsection (e) if:
>
>> (1) compelling medical evidence exists of:
>>
>>> (A) a significant error by the certifying doctor in applying the appropriate American Medical Association guidelines or in calculating the impairment rating;
>>>
>>> (B) a clearly mistaken diagnosis or a previously undiagnosed medical condition; or
>>>
>>> (C) improper or inadequate treatment of the injury before the date of the certification or assignment that would render the certification or assignment invalid; or
>>
>> (2) other compelling circumstances exist as prescribed by commissioner rule.

---

[1] *Compare Texas Prop. & Cas. Ins. Guar. Ass'n v. Toberny*, No. 03-08-00483-CV, 2010 WL 985170, at *3–5 (Tex. App.—Austin Mar. 19, 2010, pet. denied) (mem. op.), in which this Court held that a 90-day rule similar to the one we held invalid in *Fulton* was "in harmony with the objectives of the Act" when applied to limit the time within which an *employer* could contest an injured worker's MMI and IR. *See id.* at *4–5. The 90-day law at issue in the present case was not applicable in *Toberny*, so the holding in that case is not pertinent here.

Tex. Lab. Code § 408.123(f). In addition, as mentioned earlier, TDI must give claimants notice of how to dispute their MMI and how long they have to dispute it. *See* 28 Tex. Admin. Code § 130.2(a)(3).

When balanced against the WCA's overall purpose, we cannot say that the added restriction created by the 90-day law renders the WCA arbitrary or unreasonable. We hold that the statutory 90-day law does not violate the Open Courts or Due Course of Law provisions of the Texas Constitution.

### *Summary Judgment for Illinois National*

The trial court granted summary judgment for the workers' compensation insurance carrier, Illinois National. To the extent Engel challenges the court's summary judgment for the carrier at all, it is only on the basis of the issues discussed above. Because we have rejected his contentions as to those issues, Engel has not shown that the trial court erred in granting summary judgment in the carrier's favor. We overrule this issue.

### CONCLUSION

We overrule Engel's appellate challenge to the trial court's grant of the State parties' pleas to the jurisdiction. In this circumstance, we are called upon to determine if the case should be remanded to the trial court to give Engel an opportunity to amend his petition in a further attempt to successfully assert jurisdiction over the State parties.

We recognize that "Texas law does not favor striking defective pleadings without providing plaintiffs an opportunity to replead." *Dohlen v. City of San Antonio*, 643 S.W.3d 387, 397 (Tex. 2022). Remanding for an opportunity to replead is not justified, however, when the pleading defect cannot be cured by amendment. *See Sefzik*, 355 S.W.3d at 623. In addition, the

20

possibility of asserting new *claims*, as opposed to pleading new jurisdictional *facts*, is not a sound basis for remand. *See Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 559 (Tex. 2016) ("Generally, remand is a mechanism for parties, over whose claims the trial court may have jurisdiction, to plead facts tending to establish that jurisdiction, not for parties, over whose claims the trial court does not have jurisdiction, to plead new claims over which the trial court does have jurisdiction.").

In the present case, we do not see a way in which proper repleading could cure the jurisdictional defects in Engel's case. As to defendants Brown and Paxton, Engel would have to bring a different claim. As to the State of Texas, no amount of repleading could create the type of "enforcement connection" necessary for the State to be a proper party. As to TDI, Engel's attempt to challenge the ODG rule would require him to bring a different cause of action, and his statutory-conflicts claim is facially invalid with no possible cure available. Moreover, we can see no additional facts that could validate his constitutional challenges to the WCA. In short, remanding to give Engel an opportunity to replead would be pointless. *See University of Houston v. Kingsbury*, No. 14-22-00861-CV, 2023 WL 8271031, at *6 (Tex. App.—Houston [14th Dist.] Nov. 30, 2023, pet. denied) (mem. op.) ("Remanding this case to allow Kingsbury to amend her petition would serve no legitimate purpose because she cannot overcome the defects of her pleadings."); *Ogbodiegwu v. Daniel*, No. 03-22-00723-CV, 2023 WL 3727964, at *3 (Tex. App.—Austin May 31, 2023, pet. denied) (mem. op.) ("The jurisdictional bar here does not arise from the lack of factual allegations but from the nature of Ogbodiegwu's claim. To cure the defect here would not entail adding new jurisdictional facts but would essentially require Ogbodiegwu to plead a new claim."). In this scenario, Engel is not entitled to an opportunity to replead.

Having overruled Engel's appellate issues, we affirm the trial court's judgment.

_____

J. Woodfin Jones, Justice

Before Justices Triana, Smith, and Jones*

Affirmed

Filed:   July 17, 2024

*Before J. Woodfin Jones, Chief Justice (Retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code § 74.003(b).